JANE M. CARROLL, PLAINTIFF IN ERROR, *v.* LESSEE OF GEORGE W. CARROLL, DE ROSZ CARROLL, ROBERT D. CARROLL, CHARLES W. CARROLL, JOHN M. MARTIN AND AMERICA HIS WIFE, AND JOHN FORD AND MARY HIS WIFE.

By the common law of Maryland, lands of which the testator was not seized at the time of making his will, could not be devised thereby.

In 1850, the legislature passed the following act:

Sec. 1. Be it enacted, &c., That every last will and testament executed in due form of law, after the first day of June next, shall be construed with reference to the real estate and personal estate comprised in it, to speak and take effect as if it had been executed on the day of the death of the testator or testatrix, unless a contrary intention shall appear by the will.

Sec. 2. That the provisions of this act shall not apply to any will executed, before the passage of this act, by any person who may die before the first day of June next, unless in such will the intention of the testator or testatrix shall appear that the real and personal estate which he or she may own at his or her death, should thereby pass.

Sec. 3. That this law shall take effect on the first day of June next.

In 1837, Michael B. Carroll duly executed his will, making his wife Jane, his residuary legatee and devisee. After the execution of his will, he acquired the lands in controversy, and died in August, 1851.

The lands which he purchased in 1842 did not pass to the devisee, but descended to the heirs.

The cases upon the subject examined.

A distinction is to be made between cases which decide the precise point in question and those in which an opinion is expressed upon it, incidentally.

Evidence that the name of the tract of land, conveyed by a deed, was the same with the name given in an early patent; that it had long been held by the persons under whom the party claimed; and that there was no proof of any adverse claim, was sufficient to warrant the jury in finding that the land mentioned in the deed was the same with that mentioned in the patent.

The lessee of the plaintiffs having claimed, in the declaration, a term of fifteen years in three undivided fourth parts of the land, and the judgment being that the lessee do recover his term aforesaid yet to come and unexpired, this judgment was correct.

THIS case came up, by writ of error, from the Circuit Court of the United States for the District of Maryland.

It was an action of ejectment brought by the defendants in error, as heirs of Michael B. Carroll, to recover three undivided fourth parts of all of three several tracts or parcels of plantable land, called, for the first of said three tracts, "Black Walnut Thicket" and "Content," contiguous to each other, lying and being in Prince George's county, in the State of Maryland, containing seven hundred acres, more or less; and called, for the second of said three tracts, "Addition to Brookfield," situate, lying, and being in Prince George's county aforesaid, containing one hundred and fifty acres, more or less; and called, for the third of said three tracts, "Lot No. 1," being part of a tract of land called Brookfield, containing four hundred and fifty acres, more or less.

Carroll made a will in 1837, in which, after some legacies, he devised all the rest of his property, real, personal, and mixed, to his wife, Jane M. Carroll.

In 1850, the legislature of Maryland passed a law, which is recited in the syllabus at the head of this report, and also in the opinion of the court.

In August, 1851, Carroll died, upon which the present action of ejectment was brought by three of the four branches of his heirs, to recover three undivided fourth parts of the lands mentioned in the beginning of this report. The claim to the two latter tracts did not appear to have been prosecuted, but the controversy turned exclusively upon the title of the plaintiffs below to "Black Walnut Thicket" and "Content."

Upon the trial in the Circuit Court the plaintiffs offered, in evidence, to support their title:

1. The patent for "Black Walnut Thicket," dated at the city of St. Mary's on the 27th September, 1680, and the patent for "Content," dated on the 10th of August, 1753.

2. A deed from W. B. Brooks and others, to Michael B. Carroll, dated on the 29th of January, 1842, which purported to convey all those tracts, parts of tracts, or parcels of land lying and being in Prince George's county, called "Black Walnut Thicket" and "Content," contiguous to each other, and contained within the following metes and bounds, courses and distances, namely, . . . . . (these were not identical with those of either patent.)

3. The plaintiff then proved possession, by Carroll, of the parcel of land described in the deed to him, from the date of that deed until his decease; and also proved possession of the same by those under whom Carroll claimed from 1809.

The defendant, by her counsel, then prayed the court to instruct the jury that there was no sufficient evidence in the cause from which the jury could properly find that the land embraced in said deed, from said Walter B. Brooks and others, to said Michael B. Carroll, offered in evidence by the plaintiffs, is the same land, or parcel of the same lands, embraced in the said patents or in either of said patents. But the court refused said prayer, being of opinion that there was evidence in the cause proper to be left to the jury to determine whether the said land, mentioned in the deed, was the same, or part of the same, granted by the said patents. To which opinion of the court, and to the refusal of said court to grant the aforesaid prayer of the said defendant, the said defendant, by her counsel, prayed leave to except, and that the court would sign and seal this first bill of exceptions, according to the form of the statute in such case

made and provided; and which is accordingly done this fourth day of December, 1852.

R. B. TANEY,   [SEAL.]
JOHN GLENN.   [SEAL.]

Defendant's second exception.   The defendant then offered in evidence the last will and testament of Michael B. Carroll, dated on the 10th of September, 1837, by which, as has been before mentioned, he made his wife, Jane, his residuary devisee. Thereupon, upon the prayer of the plaintiff, the court gave the following instruction to the jury.

If the jury find that the plaintiff, and those under whom he claims, have possessed and held the land called Black Walnut Thicket and Content, described in the deed from Walter B. Brooke and others, to Michael B. Carroll, dated    29, 1842, and that the said Michael B. Carroll died seized thereof August 30, 1851, and the lessors of the plaintiffs are his heirs at law, and that the said land is the same, or part of the same land mentioned in the patents for Black Walnut Thicket and Content, offered in evidence by the plaintiffs, then the plaintiffs are entitled to recover the land mentioned in the said deed, and that the same did not pass to the defendant by the said will of Michael B. Carroll.

To the giving of which said instruction the defendant, by her counsel, prayed leave to except, and that the court would sign and seal this second bill of exceptions, according to the form of the statute in such case made and provided; and which is accordingly done this fourth day of December, 1852.

R. B. TANEY,   [SEAL.]
JOHN GLENN.   [SEAL.]

Upon this instruction the jury found the following verdict.

*Verdict.*   Who being impanelled and sworn to say the truth in the premises, upon their oath do say, the defendant is guilty of the trespass and ejectment in the declaration mentioned upon the tracts of the land therein stated, called Black Walnut Thicket and Content, in manner and form as the said lessee, John Doe, complains against her, and which is contained within the metes and bounds, courses and distances, set out and described in the paper hereto annexed, and made for that purpose a part of this verdict, being a deed from Walter B. Brooke, of Prince George's county, and State of Maryland, Alexander Middleton and Elizabeth A. Middleton, his wife, of Charles county, and said State, to Michael B. Carrol, dated the 29th January, eighteen hundred and forty-two; and they assess the damages of said John Doe, lessee, by occasion of the trespass and ejectment aforesaid at one dollar; and as to the other trespasses and eject-

ment upon the other tracts or parcels of land in said declaration, also mentioned, they find that the said defendant is not guilty. (Then followed the deed.)

Upon which verdict the court entered the following

*Judgment.* Therefore it is considered by the court here, that the said lessee, as aforesaid, do recover against the said Jane M. Carroll his term aforesaid yet to come and unexpired, of and in the said tracts of land called " Black Walnut Thicket " and " Content," with the appurtenances in the district aforesaid, wherein the said Jane M. Carroll is, by the jurors above, found to be guilty of the trespass and ejectment aforesaid; and the sum of one dollar his damages by the said jurors in manner aforesaid assessed; and also the sum of                    by the court now here adjudged unto the said lessee for his costs and charges by him about his suit in this behalf expended, and that he have thereof his execution, &c.

The case was argued by *Mr. Schley* and *Mr. Alexander*, for the plaintiff in error, and by *Mr. Nelson* and *Mr. Johnson*, for the defendants in error.

Before stating the points made by the counsel for the plaintiff in error, it is proper to mention that at December term, 1853, of the Court of Appeals of Maryland, a case came before that court, where a bill was filed by the executors of Mrs. Carroll, (who died in 1853,) against the administrators *de bonis non* of Mr. Carroll and his heirs at law. The question was whether an injunction ought to be granted to prevent the sale of the negroes of Michael B. Carroll, which sale had been ordered by the Orphans' Court of Prince George's county. In the opinion given by the Court of Appeals, in that case, it was held that the will of Mr. Carroll fell within the provisions of the act of the legislature of Maryland, and consequently that the land was devised to his wife.

The points on behalf of the plaintiff in error, in this court, upon the construction of the statute, were,

1. That (apart from the controlling effect of the decision of the Court of Appeals of Maryland upon the said act, and in relation to this very will) the said act, upon its true construction, does include the said after-acquired land.

2. That whatever might be the decision of this court, if the question were undecided, yet the decision of the highest tribunal in Maryland, upon a statute of that State, will be respected by this court as a true and binding construction thereof.

On the 1st point, the following authorities were cited: Broom's Legal Maxims, 246; Fowler v. Chatterton, 19 Eng. C. L. Rep. 75; Culley v. Doe dem. Taylerson, 39 Ib. 307; Freeman v. Moyes, 28 Ib. 103; Angell v. Angell, 58 Ib. 328; Brooks v.

Bockett, Ib. 855; 64 Ib. 121; Cushing *v.* Aylwin, 12 Metcalf, 169; Pray *v.* Waterston, Ib. 262; Tuck & Magrudur *v.* Carroll, MS. Court of Appeals of Maryland, at December term, 1853.

On the 2d point: Green *v.* Neal, 6 Pet. 291; and succeeding cases to the same point.

The counsel for the plaintiff in error also referred to the following error.

The plaintiff below only claimed three undivided parts of the land described in the declaration. By inadvertence the court's instruction asserted, upon the hypothesis of the prayer, the plaintiff's right of recovery of the entirety, and the verdict and judgment were conformable to the instruction.

The points on behalf of the defendant in error, were:

*First.* That the prayer of plaintiffs in error itself conceded that there was evidence from which the jury might find, as they did find, that the lands were the same as were included in the patents, and that it should therefore have been rejected, because where there is any evidence the jury is to decide on its sufficiency and not the court.

*Second.* That the evidence before the jury not only tended to establish the facts, but was conclusive.

*Third.* That the will of Michael B. Carroll did not embrace the lands recovered, because they were acquired after its date; that this was the settled law of Maryland at that date, and was, at the time of his death, also the law as far as wills executed at such a time, when the testator died when this testator died — such a will not being included within the act of Maryland of 1849, c. 229, passed the 22d of February, 1850.

Before that statute, after-acquired real estate did not pass. Kemp's Executors *v.* McPherson, 7 Harr. & Johns. 320.

Statutes are not to be construed to have a retrospective operation. Prince *v.* United States, 2 Gallis. 204; United States *v.* Schooner Peggy, 1 Cranch, 103; Butler *v.* Boarman, 1 H. & McH. 371.

Mr. Justice CURTIS delivered the opinion of the court.

This action of ejectment was brought in the Circuit Court of the United States for the District of Maryland, to recover three undivided fourth parts of three tracts of land lying in Prince George's county, in that State. Both parties claimed under Michael B. Carroll; the plaintiffs as heirs at law, the defendant as devisee. It appeared at the trial, in the court below, which was had at the November term, 1852, that on the 10th day of September, 1837, Michael B. Carroll duly executed his last will, the material parts of which are as follows:

To my dear wife, Jane, I give and bequeathe all my slaves, and do request that none of them may be sold or disposed of for the payment of my debts, but that provision shall be made for discharging the same out of the other personal property and effects which I shall leave at the time of my death.

All the rest and residue of my property, both real, personal, and mixed, I give, devise, and bequeathe to my said wife, Jane, who I do hereby constitute and appoint sole executrix of this my last will and testament, enjoining it upon her nevertheless to consult and advise with the said John B. Brooke, as occasion may require, respecting the settlement of estate, and make him a reasonable compensation for the same out of the funds hereinbefore bequeathed to her; and I do hereby revoke and annul all former wills by me heretofore made, declaring this, and none other, to be my last will and testament.

It further appeared, that after the execution of this will, Michael B. Carroll acquired other lands, and the plaintiffs, as heirs at law, claimed to recover three undivided fourth parts thereof as undevised land. The defendant insisted that these, together with all the other lands of the testator, passed to her under the residuary clause of the will. She admitted that, by the common law of Maryland, lands of which the testator was not seized at the time of making his will, could not be devised thereby, but insisted that an act passed by the legislature of Maryland, on the 22d day of February, 1850, so operated as to cause this will to devise the lands to her. That act is as follows:

Section 1. Be it enacted by the General Assembly of Maryland, That every last will and testament, executed in due form of law, after the first day of June next, shall be construed with reference to the real estate and personal estate comprised in it, to speak and take effect as if it had been executed on the day of the death of the testator or testatrix, unless a contrary intention shall appear by the will.

Section 2. And be it enacted, That the provisions of this act shall not apply to any will executed before the passage of this act, by any person who may die before the first day of June next, unless in such will the intention of the testator or testatrix shall appear that the real and personal estate which he or she may own at his or her death, should thereby pass.

Section 3. And be it enacted, That this law shall take effect on the first day of June next.

It is argued by the counsel for the devisee that the first section of this act was intended to prescribe a new rule of construction of wills, and to fix the time when the courts should begin to apply that rule; that new rule being, that wills of the

Carroll v. Lessee of Carroll et al.

realty should be deemed to speak at the time of the death of the testator; and the time when the courts should begin so to construe them, being the second day of June, 1850; and that the law should be so read as to mean that, after the first day of June, 1850, wills should be deemed to speak as if executed on the day of the testator's death, unless a contrary intention should appear.

To this construction there are insuperable objections. It would change the legal operation not only of existing wills, but of those which had already taken effect by the death of testators. It would make the same will, if offered in evidence on the 2d day of June, operative to pass after-acquired lands to a devisee, though if offered in evidence on the next preceding day it would be inoperative for that purpose. The object of the whole law concerning wills, is to enable the owners of property reasonably to control its disposition at their decease. To cause their real intentions and wishes to be so expressed, and their expression to be so preserved and manifested that they can be ascertained and carried into effect, are the chief purposes of legislation on this subject. So to interpret an act concerning wills as to cause those instruments to operate without regard to the intent of the testator, having one effect to-day and another to-morrow, would not only be arbitrary and a violation of the principles of natural justice, but in conflict with what must be presumed to have been the leading purpose of the legislature in passing the law, the better to give effect to the intent of the testator. To induce the court to believe the legislature intended to make this law retroactive upon a will then in existence, and cause it to pass after-acquired lands without any evidence that the testator desired or believed that it would do so, and to fix a particular day, before which the will should not so operate, and on and after which it should so operate, such intention of the legislature must be expressed with irresistible clearness. Battle v. Speight, 9 Ired. 288. It is very far from being so expressed in the first section of this act. On the contrary, its natural and obvious meaning is, that wills executed after the first day of June, 1850, are the only subjects of its provisions.

The words "after the first day of June next" refer to and qualify the words "executed in due form of law," which they follow, just as in the same section the words "on the day of the death of the testator" refer to and qualify the word "executed." In the former case they indicate the time when the will shall be deemed to have been executed; in the latter, the period of time when it was actually executed.

In our opinion, the first section of this law is free from ambi-

24 *

guity, and applies only to wills. executed after the first day of June, 1850 ; and, as this will was executed before that day, it is not within this section.

Nor is it within the second section of the act; because that applies only to cases in which the testator having executed his will before the passage of the act, might die before the first day of June then next, and this testator survived till after that day.

It has been supposed however, that although the first section of this act is free from ambiguity standing by itself, and ought to be so construed as to apply only to wills executed after the first day of June, 1850, yet that the second section shows that wills executed before that day were intended to be included in the first section. The argument is that the second section excepts out of the operation of the first section certain wills executed before the first day of June, 1850, and thus proves that the first section embraces wills executed before that day. This argument requires a careful examination. To appreciate it, we must see clearly what are the nature and objects, as well as the form of the two enactments. The first prescribes a new rule of construction of wills. They are to be deemed to speak as of the time of the death of the testator; but power is reserved to him to set aside this rule by manifesting in his will an intention not to have it applied. The real substance and effect of the second section is to enable certain testators to pass their after-acquired lands by expressing an intention to pass them.

By force of the first section, the law prescribes a rule of construction, which a testator may set aside. By force of the second section, a testator may manifest an intention to have his will speak as of the time of his decease, and so adopt that rule of construction. It thus appears that the office of the second section is not to take certain cases out of the operation of the first section, but to prescribe another and substantially different rule of law for those cases. It is true, negative language is used, which leaves the law open to the suggestion that the provision of the act would have applied to such wills if the negative words had not been used.

But it must be remembered that this is only an inference, the strength of which must depend upon the subject-matter of the provisions and the language employed in making them.

If every part of the law can have its natural meaning and appropriate effect by construing this second section as an additional enactment, and if to construe it as an exception would affix to the first section a meaning which would be inconsistent with the great and leading purpose of the legislature, and at the same time be arbitrary and unjust; and if when viewed as an

Carroll *v.* Lessee of Carroll et al.

exception, the cases can, on no just principle, be distinguished from those left unexcepted, then manifestly it should not be construed as an exception, but as a substantive enactment, prescribing for the particular cases a new rule of law not provided for in the first section. We have already pointed out the consequence of holding the first section applicable to all wills. In addition to this it is worth while to inquire if the second section was designed to except certain cases out of the first section, what those cases were, and how they are so distinguished from the cases left unexcepted as to be proper subjects of exception. The proposition is, that the first section includes all wills whenever executed, and the second excepts only wills executed before the passage of the act by persons dying after the passage of the act, and before the first day of June, 1851. Can any reason be imagined why a will executed before the passage of the act should be within the first section if the testator died the day before the passage of the act, and out of it if he died the day after its passage? If there is any distinction between the two cases, it would seem the first case had the stronger claim to exemption from the effect of the new rule.

Nor do we perceive any difficulty in so construing the two sections as to allow to each its appropriate effect, while neither of them violates any principle of natural right; the effect of the first section being to prescribe a new rule of interpretation for wills executed after the first of June, and the effect of the second being, to enable testators who had executed their wills before the passage of the act, and who might die before the first day of June, to pass after-acquired lands if they manifested an intention so to do. Cases of testators who should execute wills after the passage of the act and before the first day of June, or who should die after that day, having previous to that day executed their wills, are left unprovided for, either because it was thought that they would have sufficient time to conform their wills to this change of the law, or because their cases escaped the attention of the legislature, as happened in Barnitz's Lessee *v.* Carey, 7 Cranch, 468; and Blougher *v.* Brewer's Lessee, 14 Peters, 178.

We have been referred to two decisions in the Supreme Court of Massachusetts, in which a retroactive effect was allowed to a statute of that state upon existing wills. They are Cushing *v.* Aylwin, 12 Met. 169; Pray *v.* Waterston, 12 Met. 262. But an examination of those cases will show that the interpretation put by that court on that statute was attended with none of the difficulties which beset the construction of the statute of Maryland contended for by the counsel for the devisee. The law of Massachusetts did not enact a new rule of construction.

It simply enabled, testators to devise after-acquired lands by plainly and manifestly declaring an intention to do so. The law could only operate in furtherance of the intention of the testator, and could never defeat that intent by applying to wills an arbitrary rule of construction.

This distinction was pointed out by this court in Smith et al. *v.* Edrington, 8 Cranch, 66, in reference to a similar statute in Virginia; respecting which Mr. Justice Washington said, "the law creates no new or different rule of construction, but merely gave a power to the testator to devise lands which he might possess or be entitled to at the time of his death, if it should be his pleasure to do so." Moreover the language of the act of Massachusetts was broad, and general enough to include in its terms all wills which should take effect after the law went into operation. There was therefore nothing in the words, or the subject-matter of the act, to lead the court to a more restricted construction. Still that court thought the retroactive effect of even such a law required some notice, and they vindicate the departure from an important principle in that case with some effort; and the reluctance with which it should be departed from, is well expressed by the Supreme Court of North Carolina, in Battle *v.* Speight, 9 Ired. 288, in construing a similar statute of that State.

We have also been referred to a manuscript opinion of the Court of Appeals of the State of Maryland upon the effect of this will. It appears that in November last the executors of Mrs. Carroll, the devisee, who is deceased, filed their bill in the Circuit Court of Prince George's County, praying that the administrators, *de bonis non* of Michael B. Carroll might be enjoined from making sale of his negro slaves. The heirs at law and the administrators *de bonis non* of Michael B. Carroll were made parties. The Circuit Court refused the injunction, the complainants appealed, the Court of Appeals affirmed the decree of the Circuit Court, and dismissed the bill. The grounds upon which the court rested its decree will best appear from the following extracts from the opinion:

" The bill is filed by the executors of Mrs. Carroll against the administrators *de bonis non* of Mr. Carroll and his heirs at law. The gravamen of it is, that he specifically bequeathed his negroes to his wife, and desired they should not be sold, and that his debts should be paid out of his other estate; that she manumitted them, and that there is other personal and real estate enough to pay the debts due by his estate. Injunction is asked to prevent the sale of the negroes under an order of the Orphans' Court of Prince George's County, which, it is alleged, is about to be done. It is also claimed in the bill, that at the time of

the will of Mrs. Carroll she must be considered as holding the negroes as legatee, and not as executrix, the time specified by law for winding up the estate of her husband having elapsed.

" This last ground cannot avail. There is no allegation in the bill that a final account had been settled by her, and the bill shows that a large amount of debts remained unpaid, and that the creditors of the estate of her husband had commenced proceedings to secure their payment, which proceedings are still pending. In this claim of the bill we suppose but little confidence was, or is reposed by those who framed it; at all events, there is nothing in it. There is nothing in the facts of the case to justify the presumption that there had been a final settlement of the estate of Michael B. Carroll, and all his debts paid off; the truth is, the bill directly contradicts the facts out of which such a presumption could arise.

" It is contended, on the part of the complainants, that the real estate and personal property, other than the negroes of Michael B. Carroll, ought to be applied to the payment of his debts before the negroes are resorted to. This may or not be so; and in regard to it we pass no opinion, because the question is not before us in this case. This is not a bill filed on behalf of the negroes, but by the executors of Mrs. Carroll, and they must occupy the same position in regard to the creditors of Michael B. Carroll, who are represented by the administrators *de bonis non*, as she would have done had the bill been filed by her instead of by them. And if she were the party complainant, how would the case stand? Why, thus: Michael B. Carroll died in debt, leaving a will by which his real and personal estate is specifically devised and bequeathed to his wife. His creditors would have the right to proceed against his entire estate for payment; first, however, against the personal as the primary fund. Their rights could not be affected by any thing he might request in his will; their claims would attach to his entire estate. He did not manumit his slaves; and, moreover, this is not the case of contribution and marshalling of assets between different devisees and legatees, because here Mrs. Carroll was specific devisee and legatee, and residuary devisee and legatee; she, in fact, with but trifling exception, took under the will the whole estate. Had she, immediately on obtaining letters of administration, manumitted the negroes, it could not be pretended such manumission could have affected the rights of the creditors of her testator; and it must be obvious, if she could not do it by her act as executrix, that she could not accomplish it by her will.

" For these reasons we affirm the order of the Circuit Court refusing the injunction."

It is apparent that the question whether some of the lands of the testator were undevised could not enter into or affect the decision of this case. The negroes not being parties, no question could arise whether they were entitled to have the debts paid out of the land of the testator, and the court declares the question is not before them. As between Mrs. Carroll, the executrix of her husband's will or her representatives and the creditors of her husband, the right of the latter was complete to resort to the personal property, including the negroes, and it was therefore wholly immaterial who owned the land. The only prayer in the bill was that the creditors, through the administrators, might be restrained from making their debts out of the negroes. The only question in the case was whether they could be so restrained. And when it was decided that their legal right was, to have all the personalty, including the negroes, applied to their debts, it was immaterial what other rights they or others might have.

We do not consider, therefore, that a comparison of the titles of the heirs at law and the devisee of Michael B. Carroll to his lands was brought into judgment by this injunction bill.

If the Court of Appeals had found it necessary to construe a statute of that State in order to decide upon the rights of parties subject to its judicial control, such a decision, deliberately made, might have been taken by this court as a basis on which to rest our judgment. But it must be remembered that we are bound to decide a question of local law, upon which the rights of parties depend, as well as every other question, as we find it ought to be decided. In making the examination preparatory to this finding, this court has followed two rules, one of which belongs to the common law, and the other is a part of our peculiar judicial system. The first is the maxim of the common law, *stare decisis.* The second grows out of the thirty-fourth section of the Judiciary Act, (1 Statutes at Large, 92,) which makes the laws of the several States the rules of decision in trials at the common law; and inasmuch as the States have committed to their respective judiciaries the power to construe and fix the meaning of the statutes passed by their legislatures, this court has taken such constructions as part of the law of the State, and has administered the law as thus construed. But this rule has grown up and been held with constant reference to the other rule, *stare decisis;* and it is only so far and in such cases as this latter rule can operate, that the other has any effect.

If the construction put by the court of a State upon one of its statutes was not a matter in judgment, if it might have been decided either way without affecting any right brought into

question, then, according to the principles of the common law, an opinion on such a question is not a decision. To make it so, there must have been an application of the judicial mind to the precise question necessary to be determined to fix the rights of the parties and decide to whom the property in contestation belongs.

And therefore this court and other courts organized under the common law, has never held itself bound by any part of an opinion, in any case, which was not needful to the ascertainment of the right or title in question between the parties. In Cohens v. The State of Virginia, 6 Wheat. 399, this court was much pressed with some portion of its opinion in the case of Marbury v. Madison. And Mr. Chief Justice Marshall said, " It is a maxim not to be disregarded that general expressions in every opinion are to be taken in connection with the case in which those expressions are used. If they go beyond the case they may be respected, but ought not to control the judgment in a subsequent suit, when the very point is presented. The reason of this maxim is obvious. The question actually before the court is investigated with care, and considered in its full extent; other principles which may serve to illustrate it are considered in their relation to the case decided, but their possible bearing on all other cases is seldom completely investigated." The cases of Ex parte Christy, 3 How. 292, and Jenness et al. v. Peck, 7 How. 612, are an illustration of the rule that any opinion given here or elsewhere cannot be relied on as a binding authority, unless the case called for its expression. Its weight of reason must depend on what it contains.

With these views we cannot regard the opinion of the Court of Appeals as an authority on which we have a right to rest our judgment. We have already stated the reasons which have brought us to a different construction of the statute; reasons which do not seem to us to be shaken by the opinion of the Court of Appeals.

Our conclusion is that the will of Michael B. Carroll was not within the statute, and the lands in question were consequently undevised.

One other exception was taken at the trial, respecting which it is only necessary to say that we think the identity of name of the two tracts of land in the same county, taken in connection with the long possession of those under whom the plaintiffs claimed, and the absence of all evidence of any adverse claim or outstanding title, was sufficient to warrant the jury in finding that the land was embraced in the patents from the State.

We are also of opinion that the judgment is correct in form, being for the term which the declaration alleges was created by

the plaintiffs as owners of three undivided fourth parts of the land.

The judgment of the Circuit Court is affirmed, with costs.

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the District of Maryland, and was argued by counsel. On consideration whereof, it is now here ordered and adjudged by this court that the judgment of the said Circuit Court in this cause be, and the same is hereby affirmed, with costs.