Howinr, J.,
concurring as to the.sloop, but dissenting as to the cargo:
I concur as to the' illegality of the condemnation of the sloop, because its nationality was sufficiently proven to the prize court by its register, and other papers.
*152 I dissent as to the cargo, because the belligerent rights of the French (which became American rights under the act of our jurisdiction) are shown by the decree and the surrounding circumstances, and have not been disproved under the rule that the decree of a prize court is conclusive against all the world as to all matters decided and within its jurisdiction. (Williams v. Armroyd, 7 Cranch, 603.) Such decree does not usually state the grounds of condemnation, but where it does is conclusive of its own correctness. The fact of real title is open to investigation only as to those matters not concluded by the recitals of the decree. (Maley v. Shattuck, 3 Cranch, 642.)
The decree recites want of a role d'équipage and the absence of an invoice.
The majority say the absence of a role d? equipage is no longer a debatable question. (Neither side makes it a question.)
But the invoice was quite material, because its absence is strong presumptive evidence against neutrality. What, then, do we find? No sufficient proof of property, no muster roll, no bill of lading, no manifest, no invoice. These are some of the papers which are always expected to be found on board. (Baker’s ITalleck’s Int. Law, sec. 98; 1 Chitty’s Com. Law, 487.)
The case is not sustained by the Hazard, Campbell (39 C. Cls. B.., 376). Proof aliunde the vessel’s papers was admitted in the Hazard, not to contradict the recitals of the decree as to the invoice, but, as the papers were not deemed the sole test of neutrality, the court looked to all other papers and some subsequent testimony to determine neutrality. In the case at bar we do the same thing. But here the master’s protest only alleges ownership of the vessel, and does not claim neutrality for the cargo. There is no subsequent paper disclosed except a general statement at the time of the sloop’s clearance that its owners were freighterers. “ Freighter,” in French law, is the owner of the vessel, and the merchant who hires it is called the “ affreighter ” (Emerigon-Traite, Des. Assurances; Black’s Law Dictionary). That there was no paper on board which showed neutrality of the eargo, and that the master’s protest and the circumstances confirmed *153 the truth of the decree, establishes the condemnation legal as to the cargo. The good faith of the French is shown by the subsequent delivery of every paper in this case to the American owners of the sloop.
The Hazard, Campbell, supra — Howry, J., speaking for the court — was the extreme of liberality in this class of cases. There it appeared that the Supreme Court had said that the law of nations presumed and required that in time of war every neutral vessel should have on board papers showing her character, and should also have officers and crew able to testify to facts establishing neutrality. This court gave effect to that other decision of the Supreme Court in the Amiable Nancy, 3 Wheat., 561, where it appeared that the mere want of papers could not afford a just cause of condemnation, but a circumstance of suspicion explainable by the preparatory examinations of the officers and crew, and by the fact of a voluntary arrival. Accordingly, the decision went off on the ground that, while the absence of papers was strong presumptive evidence against the ship’s neutrality, the want of any one of them was not absolutely conclusive (1 Kent’s Com., 157).
In the case at bar, the absence of the invoice was suggested, and it has never been accounted for — not even in the subsequent protest of the master. Hence the decree is conclusive.
So much of the opinion of the majority as rests the supposed illegal action of the prize tribunal upon the alleged imprisonment of the master is a matter too important to be passed over. It says that the master was not allowed to be personally present at the trial. The master does not say so. There is not a syllable in the entire evidence which supports that statement. The master merely states in general terms that he was imprisoned three months. How, where, whether on the island in duress like nearly every blockade runner or shipmaster violating the laws of neutrality, does not appear.
The record shows that there was a regular judicial proceeding and that the master was there. He must have been there delivering testimony, because his deposition shows him to have been there.
These considerations take the case out of that class where this court has decided that imprisonment and absence oper *154 ated to prevent the master from being beard in his defense, and where we have held that the matter of imprisonment was necessary to be considered to prevent confiscation. Not a single case has ever been decided by this court where it has appeared that if the master’s evidence was taken and the record shows that he was there the duress of his person made void the proceeding'. When a vessel is on trial for violating the laws of neutrality, the master and crew are all under duress and practically in restraint. It is upon the ship’s papers and the examination taken in preparatorio that the case is tried.
In Dos Hermanos, 2 Wheat., 76, the Supreme Court has held that in prize cases the cause is to be heard exclusively upon the ship’s papers, and the examination of the principal officers and seamen of the captured vessel taken on the standing interrogatories. This is the established rule.
In the case of the Ann, in 3 Wheat., 434, the vessel was captured by an American privateer while at anchor near the Spanish part of the island of St. Domingo and carried into New York for adjudication. The master and supercargo were put on shore at St. Domingo, and all the rest of the crew, except the mate, carpenter, and cook, were put on board the captured vessel. After arrival at New York the deposition of the cook only was taken, which, with the ship’s papers, were transmitted by the commander to the judge of the district of Maryland, to which the case of the Ann was removed. The trial upon prize proceedings being instituted, the testimony of the carpenter was taken by the claimants, and the captors were also permitted to give testimony. The separation of the master and the principal officers and the crew from the vessel was not held fatal to the regularity of the proceedings.
These decisions from the Supreme Court prove that the award in this case, predicable upon the alleged imprisonment, is an innovation in prize law. Numberless prize proceedings during the war between the States would now appear to be illegal if this award is law. And when we come to consider that the awards of this court in these cases are not the subject of review by the Supreme Court and that this erroneous decision on a matter so vital (as I'view it) will some time or *155 other turn to vex the Government, it is of more than passing importance that the reasons of my dissent shall be recorded.
No case decided by us is authority for this award. The conclusions are squarely against the ruling in the Betsey, 36 C. Cls. R., 256, where Nott, Ch. J.; said that though that vessel carried a manifest showing of what the cargo consisted and that it was an innocent or commercial cargo, nevertheless she carried no document whatever to show neutrality. The conclusion there was that the prize courts of a belligerent nation were not bound to take notice of a local custom at variance with the requirements of international law or to infer, in the absence of an invoice, that the cargo belonged to the. oivners of the vessel. That is this case.
Nor are the conclusions of the court supported by the snow Thetis (37 C. Cls. R., 472), where Howry, J., speaking for the court, said thatwhere the decree of a prize tribunal is silent as to the presence of the parties in interest and there is neither protest nor proof equivalent to it showing that the owners or their agents were denied a hearing, the presumption is that they were present and given an opportunity to defend. But where it can be gathered from the action of the prize court or from proof contemporaneous with the transaction that the proceeding was one of those which .justified the American complaint of that period respecting condemnations without notice to vessel oivners, no effect will be given to the summary disposition of a vessel under such a decree.” Then followed the statement that, though the decree showed on its face that the decision upon its announcement was to be notified to the master, there was nothing to show his presence or the presence of any other person in interest at the hearing.
There is nothing to change in the Thetis opinion. The failure to notify the decision of the prize court to the master there was merely intended by this court to emphasize the fact that neither the master nor other person in interest was present at the hearing. The master was even denied the opportunity to see his ship or the authorities who took it away from him while he was imprisoned elsewhere, and the statement as to the notice given to the mate was an immaterial statement. The extract from the Thetis by the majority is as defective (in not stating enough) as the citation from *156 the same case of counsel for claimant is inapposite. No court holds itself bound by any part of an opinion not needful to the ascertainment of the right or title in question between the parties. (Carroll v. Lessee, 16 How., 286.)
Common-law principles and common-law rules of evidence have frequently been objected to in these cases, because counsel have argued (present counsel included) that common-law proceedings were relaxed by the statute of our jurisdiction. Now it appears that common-law proceedings are invoked by way of precedent to sustain this finding as to the cargo.
But prize proceedings are summary and differ materially from common-law rules of procedure. “ Notice is only for the purpose of affording the party an opportunity of being heard upon the claim or the charges made.” The books are full of cases showing that in a libel pending in an admiralty jurisdiction the manner of the notification is immaterial.
The late Justice Gray decided legal questions, including those pertaining to admiralty, so satisfactorily to the people of Massachusetts that he was called to the bench of the Supreme Court of the United States. Speaking for that tribunal, he said:
“ The law of nations presumes and requires that in time of war every neutral vessel shall have on board papers showing her character, and shall also have officers and crew able to testify to facts establishing her neutrality. The captors are therefore required immediately to produce to the prize court the ship’s papers, and her master or some of her principal officers or crew, to be examined, on oath, upon standing interrogatories and without communication with or instruction by counsel. The cause is heard in the first instance upon these proofs, and if they show clear ground for condemnation or for acquittal no further proof is ordinarily required or permitted. If the evidence in preparatorio shows no ground for condemnation and no circumstances of suspicion the captors will not ordinarily be allowed to introduce further proof, but there must be an acquittal and restitution. .When further proof is'ordered it is only from such witnesses and upon such points as the prize court may, in its discretion, think fit.” (Cushing v. Laird, 107 U. S., 77.)
The conclusions of the majority proceed upon the inconsistent assumption that the master was not there to be believed, but if he was there that he should have been believed. *157 Belief of a witness is always a matter of discretion in any kind of a court having jurisdiction.
There is a final observation not justified by the opinion of the majority. There is no proof that the master was behind prison bars. That is a mere inference arising from the general statement set forth in the master’s protest after he got home, that he was imprisoned. He may have been, but the record shows him to have been at the trial.
As to the cargo, therefore, the award is erroneous.
I am authorized to say that Booth, J., concurs in the findings and conclusions expressed in this dissent.