KLEINFELD, Senior Circuit Judge,
concurring:
I join Part II of the majority opinion, and concur in the result.
I do not join in Part I of the opinion, because Part II, addressing implied preemption of the field, entirely controls the outcome of this case. The field is preempted by the forty pages in the Federal Register in which the Department of Transportation has addressed service to disabled passengers.[1] Nothing needs to be said about express preemption, so noth *745 ing should be said. I cannot think of a good reason for us to speak at considerable length about a subject that does not in the slightest affect the decision of the case before us.
Federal preemption under the Airline Deregulation Act is a complex and nuanced body of law. I do not express agreement or disagreement with anything in the majority’s unnecessary discussion of express preemption. By adding many words to the Federal Reporter about it, we have made the subject even more complex.
The reason why express preemption is a complex and delicate subject is that the Airline Deregulation Act preempts state laws “related to a price, route, or service of an air carrier,”[2] and we and our sister circuits have read “service” in differing ways.[3] Since we need not further complexify the meaning of “service,” we should not. Much can be said, and need not be said in this case, about whether our construction of “service” in Charas v. Trans World, Airlines, Inc. is consistent with, or qualified or overruled by, the Supreme Court decision in Rowe V. New Hampshire Motor Transport Ass’%.[4] We should not address that question in a decision on which it has no bearing.
Because the lengthy first section of the majority opinion is an entirely unnecessary disquisition on a subject of no significance to the outcome, it should be regarded as dicta of no precedential force. That too is a complex issue in our circuit because of our court’s departure from the common law tradition regarding dicta and holding. That oddity in our circuit law generates more complexity into the question of whether the agency and subsequent panels are bound by Part I of today’s opinion.
Our circuit, unlike traditional common law courts, the Supreme Court,[5] and our *746 sister circuits,[6] purports in Barapind v. Enomoto[7] to treat all our considered pronouncements, whether necessary to the decision or not, as binding law. Our anomalous language in Barapind says that if “[w]e addressed the issue and decided it in an opinion joined in relevant part by a majority of the panel[,] .... [it] became law of the circuit, regardless of whether it was in some technical sense ‘necessary1 to our disposition of the case.” [8] The good and traditional reasons for stare decisis are that like cases ought as a matter of justice to be treated alike, and that stability in the law benefits those who wish to conduct their activities in compliance with and reliance on it. When cases are not alike, the common law method is to determine whether to extend or distinguish and limit pronouncements in prior cases, not to treat all the pronouncements like statutes. Part I of the majority opinion appears to be an attempt to write a binding gloss on what is a “service,” but confusion about whether, in our circuit, it has any precedential force undermines whatever value it might have as guidance.
There are good reasons why courts write dicta. Often dicta make the discussion of the law easier to understand, such as by discussing hypothetical and analogous cases. Language in a decision unnecessary to the decision often has value, for making the decision easier to understand, courts easier to predict, and decisions whether to expand or restrict holdings easier to make. Much dicta is written accidentally, because a judge explaining why the court reaches its outcome in one case will not be able to perceive every factual circumstance that will arise in the future, and potentially be covered by an accidentally overbroad rule articulated in the instant case. Part I of today’s opinion is dicta for no such good reason.
Instead, it is a prime example of what Judge Rymer, in her dissent in Barapind, called overwriting invited by the Barapind majority opinion.[9] The Constitution gives us authority to decide only “Cases and Controversies.”[10] The federal courts do not have authority to issue advisory opinions.[11] Yet that is what Part I is. The judicial power we wield is “to determine actual controversies arising between adverse litigants,” not to make law on issues that do not determine the parties’ controversy.[12]
Barapind claims authority to bind subsequent panels and district courts by dicta *747 as part of our “supervisory function.”[13] But it is doubtful that there is any such authority, particularly when a three-judge panel purports to exercise it.[14] Congress located supervisory power in the Judicial Conference of the United States[15] and the Judicial Council of the Ninth Circuit.[16] We make general rules for our court by Local Rules pursuant to Rule 47 of the Federal Rules of Appellate procedure. While we claim more authority for our en banc panels of eleven judges in our twenty-nine-judge court,[17] we have not claimed it for three-judge panels.
“Everything that ends up in F.3d cannot possibly be the law of the circuit.”[18] Since Part I of the majority opinion is entirely unnecessary to the decision in this case, I see no reason why future panels or anyone else would be bound by it. Writing what purports to be law of the circuit entirely outside the necessity of deciding the case before us increases the risk of troublesome error, and of exercising power beyond our authority. Judge Leval of the Second Circuit attacked Barapind as “announcing a rule, irrespective of whether the rule plays any functional role in the court’s decision of the case — a very considerable power, and without constitutional justification.”[19] He suggests a “blatant” hypothetical:
What if we in the Second Circuit, without any filed dispute between parties, were to publish a tract entitled In re Securities Litigation, in which we promulgated a compendium of rules to govern securities cases? I think all would agree that we lack constitutional authority to establish binding law in this fashion.
Then what if, when a securities dispute comes before us, after giving judgment on the disputed issue, we go on to say, “Having focused our attention on the subject of securities litigation, we will go beyond the particular issue in dispute and proclaim a set of rules to be followed.” Is this meaningfully different from the previous example?[20]
That is what Part I of the majority opinion is, and, as Judge Leval says of his hypothetical case, “It is beyond our authority.” [21] As Judge Rymer wrote, “Views of two or three judges in an opinion on matters that are not necessarily dispositive of the case are no different from the same views expressed in a law review article; neither should be treated as a judicial act that is entitled to binding effect.”[22]
Part I of the majority opinion does not use dicta as an explanatory aid, an often useful practice. It is not important to the decision in this case, just discussion that might arguably be useful in some other case. But when we purport to articulate law not affecting the decision of a case, our likelihood of error increases. Practicing lawyers, district judges, and subsequent appellate panels often experience difficulty *748 reaching what they agree is a sensible result, because of excess language in a case resolved on a different ground. We should police our opinions to prevent that kind of surplus language. Part II of the majority opinion fully resolves this case. Part I has no bearing on its resolution, so, right or wrong, it raises a question of whether it really is circuit law, even as it attempts to articulate circuit law.

. See Nondiscrimination on the Basis of Disability in Air Travel, 78 Fed.Reg. 67,882-924 (Nov. 12, 2013) (codified at 14 C.F.R. pts. 382, 388, 399, and 49 C.F.R. pts. 27, 382).

. 49 U.S.C. § 41713(b)(1).

. See Charas v. Trans World Airlines, Inc., 160 F.3d 1259, 1266 (9th Cir.1998) (en banc) ("Congress used the word ‘service’ in the phrase 'rates, routes, or service’ in the ADA’s preemption clause to refer to the prices, schedules, origins and destinations of the point-to-point transportation of passengers, cargo, or mail.”); Taj Mahal Travel, Inc. v. Delta Airlines, Inc., 164 F.3d 186, 193-94 (3d Cir.1998) (adopting the Charas definition). But see Hodges v. Delta Airlines, Inc., 44 F.3d 334, 336 (5th Cir.1995) (en banc) (holding that "Congress intended to de-regulate as ‘services’ ” “items such as ticketing, boarding procedures, provision of food and drink, and baggage handling, in addition to the transportation itself”); see also Bower v. Egyptair Airlines Co., 731 F.3d 85, 94 (1st Cir.2013) (adopting the Hodges definition); Branche v. Airtran Airways, Inc., 342 F.3d 1248, 1257 (11th Cir.2003) (same); Arapahoe Cnty. Pub. Airport Auth. v. F.A.A., 242 F.3d 1213, 1222 (10th Cir.2001) (quoting Hodges); Smith v. Comair, Inc., 134 F.3d 254, 259 (4th Cir.1998) (citing Hodges); Travel All Over the World, Inc. v. Kingdom of Saudi Arabia, 73 F.3d 1423, 1433 (7th Cir.1996) (adopting the Hodges definition).

. See Dilts v. Penske Logistics, LLC, 769 F.3d 637, 645 (9th Cir.2014) (arguing that, in regards to a statute analogous to the ADA, “Rowe did not.... call into question our past FAAAA cases”). But see Air Transp. Ass’n of Am., Inc. v. Cuomo, 520 F.3d 218, 223 (2d Cir.2008) (per curiam) (“Charas’s approach, we believe, is inconsistent with the Supreme Court's recent decision in Rowe. There, the Court necessarily defined ‘service’ to extend beyond prices, schedules, origins, and destinations.”); see also Bower v. Egyptair Airlines Co., 731 F.3d 85, 94 (1st Cir.2013) (“Rowe forecloses the Charas interpretation of ‘service’ as a term closely related to prices and routes.”).

. Carroll v. Carroll’s Lessee, 57 U.S. 275, 287, 16 How. 275, 14 L.Ed. 936 (1853) ("[T]his court and other courts organized under the common law, has never held itself bound by any part of an opinion, in any case, which was not needful to the ascertainment of the right or title in question between the parties.”).

. See United States v. Matchett, 802 F.3d 1185, 1195 (11th Cir.2015); Arcam Pharm. Corp. v. Faria, 513 F.3d 1, 3 (1st Cir.2007); Hearn v. Dretke (In re Hearn), 376 F.3d 447, 453 (5th Cir.2004); Cal. Pub. Employees’ Ret. Sys. v. WorldCom, Inc., 368 F.3d 86, 106 n. 19 (2d Cir.2004); DaimlerChrysler Corp. v. United States, 361 F.3d 1378, 1384 (Fed.Cir.2004); Figg v. Schroeder, 312 F.3d 625, 643 n. 14 (4th Cir.2002); PDV Midwest Ref., L.L.C. v. Armada Oil & Gas Co., 305 F.3d 498, 510 (6th Cir.2002); Wilder v. Apfel, 153 F.3d 799, 803 (7th Cir.1998); Rohrbaugh v. Celotex Corp., 53 F.3d 1181, 1184 (10th Cir.1995); Robinson v. Norris, 60 F.3d 457, 460 (8th Cir.1995); United States v. Ricks, 5 F.3d 48, 50 (3d Cir.1993) (per curiam); Noel v. Olds, 138 F.2d 581, 586 (D.C.Cir.1943).

. Barapind v. Enomoto, 400 F.3d 744, 750-51 (9th Cir.2005) (en banc) (per curiam).

. Id. at 751 (footnote omitted).

. Id. at 759 (Rymer, J., concurring in the judgment in part and dissenting in part) (''[T]he majority’s approach ... invites overwriting that may be difficult or impossible to cure.”).

. Chafin v. Chafin, — U.S. —, 133 S.Ct. 1017, 1023, 185 L.Ed.2d 1 (2013) (quotations omitted); see U.S. Const, art. III.

. United States v. Fruehauf, 365 U.S. 146, 157, 81 S.Ct. 547, 5 L.Ed.2d 476 (1961).

. Muskrat v. United States, 219 U.S. 346, 361, 31 S.Ct. 250, 55 L.Ed. 246 (1911).

. Barapind, 400 F.3d at 751 n. 8.

. But see Miller v. Gammie, 335 F.3d 889, 902-04 (9th Cir.2003) (en banc) (Tashima, J., concurring).

. 28 U.S.C. § 331.

. See id. § 332.

. See Barapind, 400 F.3d at 751 n. 8.

. Id. at 759 (Rymer, J., concurring in the judgment in part and dissenting in part).

. Pierre N. Leval, Judging Under the Constitution: Dicta About Dicta, 81 N.Y.U. L.Rev. 1249, 1251 (2006).

. Id. at 1260.

. Id.

. Barapind, 400 F.3d at 759 (Rymer, J., concurring in the judgment in part and dissenting in part).