TJOFLAT, Circuit Judge, dissenting, in which BIRCH and MARCUS, Circuit Judges,
join:
The court holds that a district court’s decision to permit the live, at-trial testimony, via two-way video transmission, of a witness in a foreign country and beyond the court’s subpoena power violates a defendant’s Confrontation Clause[1] rights. According to the court, this is primarily because the availability of a deposition pursuant to Fed.R.Crim.P. 15[2] renders it *1320 “unnecessary” to deprive the defendant of his right to be in the physical presence of a testifying witness. Because I disagree with the majority’s Confrontation Clause analysis and find fault in the court’s application of the governing Supreme Court precedents, I respectfully dissent. Part I analyzes the procedure under the framework utilized by the majority and finds no constitutional deficiency. Part II applies a different, and in my view correct, framework and arrives at the same conclusion. Part III briefly concludes.
I.
The Confrontation Clause protects a defendant’s right “to be confronted with the witness against him.” U.S. Const, amend. VI. This right cannot be reduced to a singular right to be physically present as a witness testifies. As the Supreme Court has stated, the right protected by the Clause has several components:
[T]he right guaranteed by the Confrontation Clause includes not only a “personal examination,” but also “(1) insures that the witness will give his statements under oath — thus impressing him with the seriousness of the matter and guarding against the lie by the possibility of a penalty for perjury; (2) forces the witness to submit to cross-examination, the ‘greatest legal engine ever invented for the discovery of truth’; [and] (3) permits the jury that is to decide the defendant’s fate to observe the demeanor of the witness in making his statement, thus aiding the jury in assessing his credibility.”
Maryland v. Craig, 497 U.S. 836, 845-46, 110 S.Ct. 3157, 3163, 111 L.Ed.2d 666 (1990) (citation omitted) (alteration in original) (quoting California v. Green, 399 U.S. 149, 158, 90 S.Ct. 1930, 1935, 26 L.Ed.2d 489 (1970)). As such, “face-to-face confrontation ... is not the sine qua non of the confrontation right,” id. at 847, 110 S.Ct. at 3164, and “must occasionally give way to considerations of public policy and the necessities of the case,” id. at 849, 110 S.Ct. at 3165 (quoting Mattox v. United States, 156 U.S. 237, 243, 15 S.Ct. 337, 340, 39 L.Ed. 409 (1895)) (internal quotation marks omitted).
Specifically, the Supreme Court has held that “a defendant’s right to confront accusatory witnesses may be satisfied absent a physical, face-to-face confrontation at trial only where denial of such confrontation is necessary to further an important public policy and only where the reliability of the testimony is otherwise assured.” Craig, 497 U.S. at 850, 110 S.Ct. 3166. The majority applies this two-part test and finds the procedure used here lacking for several reasons. First, the public policies the district court found in “providing the fact-finder with crucial evidence,” and “expeditiously and justly resolving the case,” while “important public policies,” “are not the type of public policies that are important enough to outweigh the Defendants’ rights to confront their accusers face-to-face.” Ante at 1315 -1316. Second, the majority faults the district court for making “no case-specific findings of fact that would support a conclusion that this case is different from any other criminal prosecution in which the Government would find it convenient to present testimony by two-way video conference.” Ante at 1316. Finally, the court suggests that, because of the availability of a deposition pursuant to Rule 15, it was not “necessary to deny the defendant his right to a physical face-to-face confrontation.” Ante at 1316.
Even assuming the majority has applied the correct constitutional test, I part ways with the majority’s analysis from the beginning. It is beyond reproach that there is an important public policy in providing the fact-finder with crucial, reliable testimony and instituting procedures that ensure the integrity of the judicial process. See Ohio v. Roberts, 448 U.S. 56, 64, 100 S.Ct. 2531, 2538, 65 L.Ed.2d 597 (1980), *1321 overruled on other grounds by Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004) (“[E]very jurisdiction has a strong interest in effective law enforcement, and in the development and precise formulation of the rules of evidence applicable in criminal proceedings.”); Martinez v. Court of Appeal, 528 U.S. 152, 163, 120 S.Ct. 684, 692, 145 L.Ed.2d 597 (2000) (“[T]he overriding state interest in the fair and efficient administration of justice” is significant enough to “outweigh an invasion of the appellant’s interest in self-representation.”); United States v. Scheffer, 523 U.S. 303, 308-09, 118 S.Ct. 1261, 1264, 140 L.Ed.2d 413 (1998) (“A defendant’s right to present relevant evidence is not unlimited, but rather is subject to reasonable restrictions. A defendant’s interest in presenting such evidence may thus ‘bow to accommodate other legitimate interests in the criminal trial process.’ ... [The interests here] include ensuring that only reliable evidence is introduced at trial [and] preserving the court members’ role in determining credibility .... ” (footnote and citations omitted) (quoting Rock v. Arkansas, 483 U.S. 44, 55, 107 S.Ct. 2704, 2711, 97 L.Ed.2d 37 (1987) (quoting Chambers v. Mississippi 410 U.S. 284, 295, 93 S.Ct. 1038, 1046, 35 L.Ed.2d 297 (1973)) (internal quotation marks omitted))); id. at 312-13, 93 S.Ct. 1038 (1998) (“It is equally clear that [Military Rule of Evidence 707, which makes polygraph evidence inadmissible in court-martial proceedings] serves a second legitimate governmental interest: Preserving the court members’ core function of making credibility determinations in criminal trials. A fundamental premise of our criminal trial system is that ‘the jury is the lie detector.’ ” (opinion of Thomas, J.) (quoting United States v. Barnard, 490 F.2d 907, 912 (9th Cir.1973)) (emphasis omitted)); United States v. Koblitz, 803 F.2d 1523, 1528 (11th Cir.1986) (holding that “the Government’s interest in the efficient administration of justice” outweighed appellants’ Sixth Amendment right to be represented at trial by their counsel of choice); United States v. Gigante, 971 F.Supp. 755, 756-57 (E.D.N.Y.1997) (“American criminal procedure ... is pragmatic. It recognizes that this ideal condition [a witness testifying in person, in court] can not be made available in every instance if there is to be an effective search for the truth in an atmosphere protecting the defendant’s needs for fairness and due process and the public’s right to protection against crime.”); Carlsen v. Morris, 556 F.Supp. 320, 322 (D.C.Utah 1982) (“The intent of the statute is to prevent interference with the fair administration of justice, an unquestionably compelling governmental interest.”); Harrell v. State, 709 So.2d 1364, 1370 (Fla.1998) (“[T]he [foreign] witnesses were absolutely essential to this case .... [T]here is an important state interest in resolving criminal matters in a manner which is both expeditious and just. In order to do that in this case, the testimony of these two witnesses was a necessity.”).[3] Indeed, ensuring the reliability of admitted testimony and safeguarding the integrity of the judicial process are core functions of the Confrontation Clause itself: “The central concern of the [Clause] is to *1322 ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact.” Craig, 497 U.S. at 845, 110 S.Ct. at 3163 (emphasis added); see also White v. Illinois, 502 U.S. 346, 356-57, 112 S.Ct. 736, 743, 116 L.Ed.2d 848 (1992) (“[T]he Confrontation Clause has as a basic purpose the promotion of the ‘integrity of the fact-finding process.’ ” (quoting Coy v. Iowa, 487 U.S. 1012, 1020, 108 S.Ct. 2798, 2802, 101 L.Ed.2d 857 (1988) (quoting Kentucky v. Stincer, 482 U.S. 730, 736, 107 S.Ct. 2658, 2662, 96 L.Ed.2d 631 (1987)) (internal quotation marks omitted))).
Moreover, providing the fact-finder with reliable testimony and justly resolving the case are the same public policies that were found important enough to warrant the one-way procedure approved in Craig. Despite the Craig Court’s suggestion that the public policy at issue was the “State’s interest in the physical and psychological well-being of child abuse victims,” Craig, 497 U.S. at 853, 110 S.Ct. at 3167, it is clear that depriving a defendant of his right to physical presence is not “necessary” to further that obviously compelling interest. The State could just as easily further this interest by not forcing the child to testify. Indeed, Justice Scalia remarked as much in dissent: “The State’s interest here is in fact no more and no less than what the State’s interest always is when it seeks to get a class of evidence admitted in criminal proceedings: more convictions of guilty defendants.” Id. at 867, 110 S.Ct. at 3175 (Scalia, J., dissenting). In other words, the State’s interests were to provide the fact-finder with reliable testimony, ensure the integrity of the judicial process, and foster respect for the rule of law. That these interests can come into conflict with a defendant’s right to physical presence as a result of physical confrontation itself as in Craig, as opposed to the limitations on a court’s subpoena power as here, does nothing to detract from the importance of these interests.
In fact, it is precisely because of the importance of obtaining reliable testimony that this court has repeatedly expressed its concern with the use of depositions in lieu of trial testimony. See United States v. Drogoul, 1 F.3d 1546, 1551 (11th Cir.1993) (“Depositions generally are disfavored in criminal cases .... In particular, because of the absence of procedural protections afforded parties in the United States, foreign depositions are suspect and, consequently, not favored.”); id. at 1552 (“The primary reasons for the law’s normal antipathy toward depositions in criminal cases are the factfinder’s usual inability to observe the demeanor of deposition witnesses, and the threat that poses to the defendant’s Sixth Amendment confrontation rights.” (footnote omitted)); United States v. Milian-Rodriguez, 828 F.2d 679, 686 (11th Cir.1987) (“The decision whether to allow ... depositions is committed to the discretion of the district court, but the use of depositions in criminal cases is not favored because the fact-finder does not have an opportunity to observe the witnesses] demeanor.” (citation omitted)). That a federal rule of criminal procedure provides for presence at a deposition, see Fed.R.Crim.P. 15(c), is irrelevant to whether the two-way video transmission is necessary to further the important public policy of providing important, credible evidence at trial.[4] The *1323 State’s interest .is not merely in providing evidence, it is in providing reliable evidence. In this regard, the two procedures are not equivalent, and it is certainly within the discretion of a trial court to determine that a deposition is not an adequate replacement for testimony at trial, before the finder-of-faet.
In some cases a trial court may determine that a deposition is a satisfactory substitute for live testimony and the added Confrontation Clause benefit of presence at the deposition renders the deposition the preferred method for obtaining the testimony. In other cases, the court may determine that the opportunity for a credibility assessment provided by live, two-way transmission is of particular importance to ensure the reliability of- the testimony. Such a determination, however, is unequivocally case-specific. It may depend on the technology available for the deposition. Whether the deposition will be taped and played before the jury or simply read into evidence is an important factor to consider in determining whether a deposition is sufficiently reliable to substitute for in-court testimony. Similarly, the type (e.g., one-way vs. two-way transmission) and quality of the technology to be used during transmission should be taken into account. A district court might also consider the necessity and nature of the witness’s testimony. Specifically, whether the testimony is accusatory or descriptive in nature might impact the court’s determination of the reliability enhancement that could result from physical presence. Additionally, the court should consider the effect of delay caused by a deposition in a foreign country during the course of trial. Not only could the delay affect the “efficient” administration of justice, but a court might also determine that a lengthy delay would affect the jury’s recollection or the availability of other witnesses. The court might also consider the importance of the testimony being given in the context of trial rather than months or years prior. The court should also consider the extent to which a given alternative deprives a defendant of his Confrontation Clause rights to “physical presence, oath, cross-examination, and observation of demeanor by the trier of fact.” Craig, 497 U.S. at 846, 110 S.Ct. at 3168.[5] Needless to say, these considerations are not exhaustive, and it is well within the sound discretion of the district court to determine how such factors impact the reliability and feasibility of a deposition. An abstract determination that the availability of a deposition makes depriving a defendant of his right to physical presence at trial unnecessary to further the public policy of providing the fact-finder with reliable testimony ignores the realities of trial and presumes that all forms of testimony aré created equal.
This case-specific determination of the reliability of a deposition as opposed to live, two-way video testimony is precisely what the Supreme Court required in Craig and the majority here finds lacking. The majority, rebukes the district court for not making “case-specific findings of fact that would support a conclusion that this case is different from any other criminal prosecution,” ante at 1316,[6] or that “the witnesses and Defendants could not be placed in the *1324 same room for the taking of pre-trial deposition testimony pursuant to Rule 15,” ante at 1317. In doing so, the majority here makes too much of the unique context of Craig. In Craig, it was confrontation itself that had to be avoided in order to obtain the testimony. Accordingly, the Court required a case-specific finding that depriving the defendant of his right to physical presence “is necessary to protect the welfare of the particular child witness who seeks to testify,” and that “the child witness would be traumatized, not by the courtroom generally, but by the presence of the defendant.” Craig, 497 U.S. at 855-56, 110 S.Ct. at 3169. Here, there is no argument that the effect of physical confrontation itself necessitates depriving the defendant of his full Confrontation right. Rather, the limitation of the court’s subpoena power so requires. As such, a finding that the defendant cannot be physically in the same room as the witness would fail to address the reason for the potential deprivation. Accordingly, once it is determined that a particular witness cannot be haled into court, and will not appear voluntarily, it should be left to the court’s case-by-case discretion to determine if there are other alternatives to two-way transmission that both provide comparably reliable testimony and fully protect the defendant’s Confrontation Clause rights. If no such alternative is available, the court has made a case-specific determination that depriving the defendant of his right to presence is necessary to further the important public policy of providing the fact-finder with dependable testimony and preserving the integrity and reliability of the judicial process.[7] It is this individualized determination that makes a particular case “different from any other criminal prosecution.”[8]
*1325 The circumstances of cases such as this foreclose the possibility of the ideal Confrontational Clause situation — namely, cross-examination of a sworn-in witness in the physical presence of both the defendant and the finder-of-fact. Thus, to the extent testimony will be admitted in these circumstances, the defendant’s Confrontation rights must be abridged in some way. None of the alternatives are identical to each other or to live testimony at trial. Nor can the alternatives always be considered perfect substitutes for one another. Here, the district court, in the exercise of its sound discretion, made a considered determination that live, two-way video transmission of unavailable witnesses’ testimony was necessary to further the important public policy of providing the fact-finder with crucial, reliable testimony. This is all Craig demands.[9]
II.
While I find serious fault with the majority’s application of .the Craig test, I am perhaps most concerned about the illogical result that follows- from the court’s failure to evaluate the procedure in its proper constitutional context. The majority’s analysis implicitly places two-way video testimony in constitutional purgatory. The witnesses are not “present” enough to be considered in the defendant’s “presence,” but are somehow “present” in court where the defendant is also “present.” In other words, despite the majority’s determination that the witnesses were not in the defendant’s presence, it analyzed the testimony as if it were given in court, as *1326 opposed to what it really is — hearsay. Viewing the testimony in this light removes any doubt as to the procedure’s constitutionality.
Evaluating the procedure here as out-of-court testimony, may, at least initially, seem precluded by Craig itself. After all, if the Supreme Court analyzed the one-way procedure in Craig as in-court, how could the two-way procedure at issue here be considered anything but in-court? The difference between Craig and the procedure here results, I believe, from the type of testimony for which the video transmission substitutes. In Craig, the witness was available to testify; the one-way procedure was intended to reduce the psychological trauma of doing so. Thus, the transmission served to replace the testimony of a witness who was otherwise available to testify in open court. Justice Scalia, in dissent, relied on the witness’s availability to distinguish the testimony from hearsay:
Some of the Court’s analysis seems to suggest that the children’s testimony here was itself hearsay of the sort permissible under our Confrontation Clause cases. That cannot be. Our Confrontation Clause conditions for the admission of hearsay have long included a “general requirement of unavailability” of the de-clarant. “In the usual case ..., the prosecution must either produce, or demonstrate the unavailability of, the declarant whose statement it wishes to use against the defendant.”
Craig, 497 U.S. at 865, 110 S.Ct. at 3174 (Scalia, J., dissenting)(alteration in origi-nalXcitations omitted)(quoting Idaho v. Wright, 497 U.S. 805, 815, 110 S.Ct. 3139, 3146, 111 L.Ed. 2d 638; Roberts, 448 U.S. at 65, 100 S.Ct. at 2538). As a result, it made sense to treat the testimony in Craig as in-court.[10]
In this case, however, the witnesses were unavailable and could not be compelled to testify at trial. As the majority’s opinion makes abundantly clear, the two-way procedure served as a stand-in for a deposition — hearsay in its purest form. That the actual testimony was given during trial, in front of a jury, as opposed to, say, the day before the trial began, does not change the analysis. There was no way to bring the witnesses physically into court. The witnesses’ testimony could only be obtained by deposition or two-way transmission. That Rule 15 provides for the defendant’s presence at a deposition is similarly irrelevant. The issue before this court is whether presence is constitutionally required for either the deposition or its functional replacement, the two-way video transmission.
The constitutionality of admitting out-of-court, testimonial statements is governed by Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177. “Testimonial statements of witnesses absent from trial [are admissible] only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine.” Id. at 59, 124 S.Ct. at 1369. Physical presence is not mentioned, nor is it required.[11] In this case, the wit *1327 nesses’ statements were unquestionably testimonial, and therefore the Crawford requirements would need to be satisfied. The defendant here was given a full opportunity to cross-examine the unavailable witnesses. Constitutional issue settled. Accordingly, there can be no question that the procedure utilized here, a mechanism for obtaining the out-of-court testimony of an unavailable witness, passes constitutional muster.
III.
For the foregoing reasons, I believe the live, two-way video transmission used in this case does not violate the defendant’s Sixth Amendment right to confrontation. Accordingly, I would affirm the judgment of the district court.

. "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him ....’’ U.S. Const, amend. VI.

. Rule 15 provides, in relevant part: Depositions
(a) When Taken.
(1) In General. A party may move that a prospective witness be deposed in order to preserve testimony for trial. The court may grant the motion because of exceptional circumstances and in the interest of justice
(c) Defendant's Presence.
(1) Defendant in Custody. The officer who has custody of the defendant must produce the defendant at the deposition and keep the defendant in the witness's presence during the examination, unless the defendant:
(A) waives in writing the right to be present; or
(B) persists in disruptive conduct justifying exclusion after being warned by the court that disruptive conduct will result in the defendant’s exclusion.
(2) Defendant Not in Custody. A defendant who is not in custody has the right upon request to be present at the deposition, subject to any conditions imposed by the court....
Fed.R.Crim.P. 15.

. Despite the majority's conclusion that the public policy at stake here is not significant enough "to outweigh the Defendants' rights to confront their accusers face-to-face,” ante at 1313, it is clear that the majority’s opinion is focused primarily on the availability of a deposition as an alternative to obtain a witness's testimony. The majority does not here reject the use of the two-way procedure where a deposition is not feasible, or in the "rare, exceptional case,” ante at 1317, where presence at a deposition cannot be guaranteed. Accordingly, the court's opinion should not be read to hold that the public policies involved here are not significant enough to satisfy the first prong of the Craig analysis.

. While it is true that the Rule does provide a defendant with an opportunity for presence, as discussed infra, there is no reason to believe that the Constitution guarantees a defendant's presence at a deposition. I find it highly problematic that the constitutionality of a procedure can rest on the whim of the Rules drafters. Either the procedure used here is adequate to protect a defendant's Confrontation Clause right or it is not. That *1323 determination ought not change every time the Rules do.

. I hasten to note that I do not believe a court should engage in a conceptual balancing of whether a particular confrontation element is invariably more important than another. I do believe, however, that a district court must take into account the extent to which a defendant's right to confrontation has been abridged; extensive deprivations are at least prima facie evidence of unreliability.

. The majority proceeds to exaggerate the "floodgate” potential of permitting the two-way procedure in this case. The court claims that
[a]ll criminal prosecutions include at least some evidence crucial to the Government’s case, and there is no doubt that many crim *1324 inal cases could be more expeditiously resolved were it unnecessary for witnesses to appear at trial. If we were to approve introduction of testimony in this manner, on this record, every prosecutor wishing to present testimony from a witness overseas would argue that providing crucial evidence and resolving the case expeditiously are important public policies that support the admission for testimony by two-way video conference.
Ante at 1316. Yet what the majority ignores is that it was not just more convenient to use two-way video transmission to obtain live testimony in this case, it was necessary to do so. This is because the witnesses were beyond the district court's subpoena power, and hence, unavailable. Despite the majority’s suggestion, this is not true of every overseas witness. Pursuant to 28 U.S.C. § 1783, "[a] court of the United States may order the issuance of a subpoena requiring the appearance as a witness before it ... of a national or resident of the United States who is in a foreign country.” Thus, it is only foreign nationals outside the United States who are beyond the federal courts’ subpoena power. So despite any given prosecutor’s sincerest wishes, unless a witness is truly unavailable, making two-way transmission necessary to obtain the witness’s testimony at trial, the prosecution has no choice but to have the witness testify in the physical presence of both the defendant and the court.

. There is no suggestion that the trial court abused its discretion in making its determination in this case.

. The majority also suggests that the failure to amend Rule 26 of the Federal Rules of Criminal Procedure to allow for two-way video transmission in certain cases is somehow relevant to the resolution of this case. Ante at 1314-1315. Itis unclear whether the maj ority's discussion goes to the constitutionality of the procedure or the scope of courts' inherent power to authorize it. To the extent the majority suggests that either the rejection of the proposed amendment or Justice Scalia's statement can be construed as a Supreme Court statement on the constitutionality of the procedure, it is flatly wrong. To begin, Justice Scalia only suggests that the proposed amendment is of "dubious validity,” Amendments to Rule 26(b) of the Federal Rules of Criminal Procedure, 207 F.R.D. 89, 93 (2002) (statement of Scalia, J.), a statement which just as easily can be made of every constitutional challenge the Supreme Court elects to hear. More fundamentally, however, the *1325 opinion represents nothing more than the legal musings of a Supreme Court Justice on an issue that has yet to be briefed and argued in a case or controversy before the Court. "[S]uch advance expressions of legal judgment upon issues which remain unfocused because they are not pressed before the Court with that clear concreteness provided when a question emerges precisely framed and necessary for decision from a clash of adversary argument exploring every aspect of a multifaceted situation embracing conflicting and demanding interests, we have consistently refused to give.” United States v. Fruehauf, 365 U.S. 146, 157, 81 S.Ct. 547, 554, 5 L.Ed.2d 476 (1961). Justice Scalia has recognized as much: "In my view even the adopting Justices' thoughts, unpromulgated as Rules, have no authoritative (as opposed to persuasive) effect, any more than their, thoughts regarding an opinion (reflected in exchanges of memo-randa before the opinion issues) authoritatively demonstrates the meaning of that opinion.” Tome v. United States, 513 U.S. 150, 168, 115 S.Ct. 696, 706, 130 L.Ed.2d 574 (1995) (Scalia, J., concurring). Accordingly, the Government’s argument is no more an "implicit claim that it knows best how to protect defendants' [constitutional] rights,” ante at 1315, than is any argument proffered by the Government in a case where the defendant happens to disagree.
To the extent the majority ascribes a limitation on the court's inherent power to the rejection of the amendment, it makes much ado about nothing. Not only could the attempt to amend Rule 26 be viewed as a constriction or delineation of courts' inherent power to authorize the procedure as opposed to a grant of power the courts previously lacked, but it is fairly uncontroversial that it was and remains well within courts' inherent power to authorize the procedure for defense witnesses or for prosecution witnesses so long as the defendant consents. For persuasive authority see 207 F.R.D. at 98 (2002) (statement of Breyer, J.). Whether a court may similarly authorize such a procedure for prosecution witnesses without a defendant’s consent is a constitutional issue, not one of inherent authority.

. The second prong of the Craig analysis requires the district court to determine that "the reliability of the testimony is otherwise assured.” Craig, 497 U.S. at 850, 110 S.Ct. 3166. Thus, the court must find not only that the two-way video procedure is more reliable than a deposition, but intrinsically reliable as well. I see nothing in the record to suggest that the district court abused its discretion in this regard.

. Of course, doing so invariably treats the witness as outside of the defendant's presence despite them both being "present” in court. However, the value of treating "presence” in a consistent manner must be balanced against the value of treating functional equivalents in a consistent constitutional manner. In Craig, the transmission was a direct replacement for the in-court testimony of an available witness and it was appropriate to analyze the procedure accordingly.

. The Crawford Court specifically mentions that the analysis applies to "testimonial” statements, such as prior testimony before a grand jury (at which presence is not permitted) or at a former trial (which, if civil, provides no presence guarantee). 541 U.S. at 68, 124 S.Ct. at 1374. It is also instructive that, despite Rule 15, depositions for which the defendant was not permitted to be present have not been found to violate either the Rule or the Confrontation Clause. See, e.g., United *1327 States v. Mueller, 74 F.3d 1152, 1156-57 (11th Cir.1996); United States v. McKeeve, 131 F.3d 1, 7-10 (1st Cir.1997); United States v. Kelly, 892 F.2d 255, 260-63 (3d Cir.1989); United States v. Salim, 855 F.2d 944, 948-55 (2d Cir.1988).