**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Quinten A. HAMMES, Jr.,
Defendant–Appellant.**

**No. 92–3819.**

United States Court of Appeals,
Seventh Circuit.

Argued May 11, 1993.

Decided Aug. 26, 1993.

**1082**

Nathan A. Fishbach, U.S. Atty. (argued), Milwaukee, WI, for plaintiff-appellee.

Thomas E. Brown (argued), Marna M. Tess–Mattner, Kathryn A. Keppel, Gimbel, Reilly, Guerin & Brown, Milwaukee, WI, for defendant-appellant.

Before CUMMINGS, COFFEY and MANION, Circuit Judges.

CUMMINGS, Circuit Judge.

In the idiom of his trade, Quinten A. Hammes, Jr. was a big-time bookie. He ran a large computerized clearinghouse for bets on sporting events out of Racine, Wisconsin and an offshore money-laundering scheme to shelter his profits from taxation. Hammes' central exchange took telephone and fax bets from "wire rooms" all across southeastern Wisconsin, processing the results by computer. It was a high-volume, sophisticated operation employing six people: the IRS estimated that between September 1984 and April 1988, Hammes' business handled over $23 million worth of sports wagers. He shared the profits with other bookies who placed bets though his exchange, and stashed some of his earnings in foreign bank accounts without reporting anything to the IRS. He even published a leaflet called "Super Sports Schedules," available at local newsstands, that listed sporting events alongside a code that allowed Hammes to process his customers' bets more quickly.

In March 1992 the government brought a seven-count indictment against Hammes and six others. Counts 1 and 2 alleged that Hammes and his co-venturers conspired to and did in fact operate an illegal gambling business prohibited by 18 U.S.C. §§ 371 and 1955. Counts 3 through 5 charged wagering excise tax evasion in violation of 26 U.S.C. § 2701. Counts 6 and 7 charged Hammes for failure to report a foreign bank account under 31 U.S.C. §§ 5314 and 5322(a). After Hammes pled guilty to counts 1, 4 and 6, the court dismissed the other charges at the agreement of the parties. Hammes received concurrent sentences of 14 months on the conspiracy and tax evasion charges and 12 months for failure to report a foreign bank account. The court also imposed 3 years of supervised release and a $5,000 fine. Having reserved his right to appeal his pleas to counts 1 and 4, Hammes now argues that the trial court should have dismissed his indictment for insufficiency, violation of his right against compulsory self-incrimination and denial of equal protection. He also challenges his sentence. We find that Hammes' indictment was sound and his sentence proper, and therefore affirm the district court's decision in all respects.

▬ First, Hammes argues that the gambling charges against him were insufficient because Wisconsin does not prohibit all forms of gambling. He was indicted under 18 U.S.C. § 1955, which requires a gambling offense to be illegal under state law before it can form the basis for a federal prosecution. Since Wisconsin does not bar all forms of gambling, Hammes asserts, he cannot be charged under the federal law. This is a curious argument because Wisconsin does in fact prohibit the types of gambling operations Hammes conducted, Wisc.Stat. § 945.-03, and thus Wisconsin's policy towards Indian casinos, church bingo or the state lottery is irrelevant. See *Lac du Flambeau Indians v. Wisconsin*, 770 F.Supp. 480, 486 (W.D.Wis. 1991), appeal dismissed, 957 F.2d 515 (7th Cir.1992), certiorari denied, —— U.S. ——, 113 S.Ct. 91, 121 L.Ed.2d 53 (1992). Because Hammes' business was illegal under Wisconsin law, he was properly prosecuted under the federal statute. 18 U.S.C. § 1955(b)(1)(i).

▬ Hammes' other challenges to the indictment are also meritless. He argues that the federal wagering tax violates his right to equal protection of law because it imposes different rates on illegal and legal

gambling. 26 U.S.C. § 4401. Again the federal statute looks to state law: if a wager is legal under state law, it is taxed at .25%, while illegal wagers are taxed at 2.0%. If Hammes had set up business in a state that allowed organized sports betting, he would be liable for less tax under the federal statute; he suggests that this bifurcated tax violates his right to equal protection of law. To prevail, Hammes must show that the statute's distinction between legal and illegal gambling is not rationally related to a legitimate interest. *Griffin High School v. Illinois High School Assoc.,* 822 F.2d 671, 674 (7th Cir.1987). Because Congress could rationally find that a higher tax on illegal gambling discourages such activity, Hammes' equal protection claim fails. *United States v. Hallmark,* 911 F.2d 399, 401 (10th Cir.1990). We reject Hammes' compulsory self-incrimination claim because the government may use voluntarily filed tax returns against a defendant without violating the Fifth Amendment. *Garner v. United States,* 424 U.S. 648, 655, 96 S.Ct. 1178, 1182, 47 L.Ed.2d 370.

■ Turning to sentencing issues, the district court imposed a 4–level enhancement under Sentencing Guidelines § 3B1.1(a) because Hammes acted as the organizer or leader of five or more people in his illegal business. Hammes argues that this determination must be overturned as clearly erroneous, *United States v. Villasenor,* 977 F.2d 331, 336 (7th Cir.1992), but we disagree. Undisputed assertions in the pre-sentence report show that Hammes supervised six workers who accepted wagers and layoffs over the telephone and entered this data into the exchange's computer. He arranged with six bookmakers to share profits and losses and with still other bookmakers to accept their layoffs. Judge Stadtmueller thoroughly explained his conclusion that Hammes was the linchpin of the Racine bookmaking operation (R. 40 at pp. 22–24), and this decision was not clearly erroneous. *United States v. Yanez,* 985 F.2d 371, 378–379 (7th Cir.1993); *United States v. Herrera,* 878 F.2d 997, 1000 (7th Cir.1989).

■ Hammes also contends that the district court erred by imposing a 2–level "sophisticated means" enhancement for his wagering tax evasion conviction. See U.S.S.G. § 2T1.1(b)(2). The pre-sentence report relates that Hammes tried to conceal his gambling activities and avoid excise taxes in several clever ways. He used aliases and bettor code numbers; he moved his wire rooms from place to place; he destroyed records; he had substantial bank accounts in the Grand Cayman Islands, Switzerland and the Mariana Islands; some of his accounts were under other names; and he did not report the interest on his accounts. The district court found that these arrangements were sophisticated enough to warrant an enhancement under Section 2T1.1(b)(2), and we cannot say that this decision was clear error. *Yanez,* 985 F.2d at 378–379.

■ Finally, Hammes claims that Sentencing Guidelines Section 3E1.1 does not give district judges sufficient direction on how to calculate a decrease for acceptance of responsibility. He points out that the amount of the decrease will depend on whether Section 3E1.1 is applied before or after other sentencing calculations, and he asks us to give further guidance on this issue. We decline to do so because here the parties agreed that Hammes was entitled to a 3–level decrease for acceptance of responsibility. Since Hammes endorsed the procedure used by the district judge in applying acceptance of responsibility points, we see no need to render an advisory opinion on this subject. *United States v. Fruehauf,* 365 U.S. 146, 157, 81 S.Ct. 547, 554, 5 L.Ed.2d 476.

AFFIRMED.