WYNN, Circuit Judge,
concurring in the result:
Because I agree that the proper disposition of this case is to vacate the district court’s judgment against Defendant Tuomey Healthcare System, Inc. and remand for further proceedings, I concur in the result reached by the majority opinion. I write separately because I come to that conclusion on different grounds, and be *410 cause I am also unable to join in Part III of the majority opinion, which I find to be advisory in nature.
At the outset, I emphasize my substantial agreement with the reasoning so ably articulated by my colleagues in the majority, particularly their observation that “the jury’s interrogatory answer regarding the Stark Law is now a legal nullity.” Ante at 405. Given that the district court set aside the jury’s verdict in its entirety, it must follow that the jury’s answer to an interrogatory, which was a necessary condition to the jury’s verdict, must itself also be a nullity. Notwithstanding that ruling, however, in its order entering judgment against Defendant, the district court found as fact that “[pjursuant to the jury verdict, Tuomey violated the Stark Law.” J.A. 136.[1]
Indeed, the sole basis for the district court’s judgment against Defendant on the equitable claims was the jury’s finding of a Stark Law violation.[2] As such, irrespective of the Seventh Amendment, the judgment, which was predicated entirely on what is now a “legal nullity,” simply cannot stand. Given this unremarkable proposition — that a judgment must be vacated if premised on a jury finding that has been set aside and is no longer valid — I see no reason to resort to constitutional analysis to support our holding. See, e.g., Norfolk So. Ry. Co. v. City of Alexandria, 608 F.3d 150, 156-57 (4th Cir.2010) (“[T]he principle of constitutional avoidance ... requires the federal courts to strive to avoid rendering constitutional rulings unless absolutely necessary.”); Ashwander v. Tenn. Valley Auth., 297 U.S. 288, 347, 56 S.Ct. 466, 80 L.Ed. 688 (1936) (Brandéis, J., concurring) (“It is not the habit of the court to decide questions of a constitutional nature unless absolutely necessary to a decision of the case.” (internal quotation marks and citation omitted)).
In addition, I cannot join Part III of the majority opinion, which, in my view, amounts to an advisory opinion on the issues of “whether the facility component of the services performed by the physicians pursuant to the contracts ... constituted a ‘referral’ within the meaning of the Stark Law and Stark Regulations,” as well as “whether ... the contracts implicate the ‘volume or value’ standard under the Stark Law.” Ante at 406; see United States v. Blair, 661 F.3d 755, 773 (4th Cir.2011) (“[Rendering advisory opinions on cases not before us is not the office of this court.”).
Under the district court’s order for a new trial on the entire Government’s False Claims Act (FCA) claim against Defendant and the majority’s holding here, no legal issues remain for us to resolve prior to further proceedings. We have fully disposed of the matters before this Court, and the conclusions set forth in Part III are thus unnecessary either to the disposition or to the retrial of this case. Accordingly, there is no need to delve into these questions now and potentially usurp the *411 proper role and province of the jury and district court.
To be sure, the three cases cited in the majority opinion for the proposition that an appellate court may properly “address other issues raised on appeal that are likely to recur,” ante at 405-06, are distinguishable in two critical ways from the situation presented here: (1) each identified and rectified actual, specific errors of law committed by the district court or lower authority; and (2) each involved bench trials, not juries. See Levy v. Lexington Cnty., S.C., 589 F.3d 708, 716 (4th Cir.2009); Elm Grove Coal Co. v. Dir. O.W.C.P., 480 F.3d 278, 299 n. 20 (4th Cir.2007); Gordon v. Schweiker, 725 F.2d 231, 236 (4th Cir.1994).
By contrast, here, Part III does not identify any specific errors committed by the district court during the first trial; instead, it decides issues before they have been squarely presented to this Court, particularly given that the analysis takes place in the context of what the majority has recognized as a “legal nullity.” Not only does the majority fail to point to any actual error in the analysis of the original trial judge in this case (who is now deceased), but we also have no indication that the new trial judge requires this Court’s cold record guidance on these issues. Cf. Levy, 589 F.3d at 716 (finding that trial judge had applied the wrong analysis and, since the matter was remanded to that same judge for retrial, determining that the issues were likely to recur); Elm Grove, 480 F.3d at 299 (finding that two Administrative Law Judges (“ALJs”) and the Benefits Review Board (“BRB”) had made or upheld an erroneous discovery ruling and, since the relevant decision was vacated and the matter was remanded to the BRB and ALJs for proceedings to begin anew, determining that the same discovery issue was likely to arise again on remand); Gordon, 725 F.2d at 236-37 (remanding for reconsideration by the Secretary of Health and Human Services, not retrial in the district court, because the Secretary’s arguments on appeal gave this Court a basis to believe that the issues would likely recur upon the Secretary’s reconsideration).
Moreover, the majority opinion’s own analysis strongly suggests that the issue of whether referrals took place is actually a mixed question of law and fact, which is properly left to the province of the jury. Further, the conclusion that “compensation based on the volume or value of anticipated referrals implicates the volume or value standard,” ante at 409-10, does not provide additional guidance to the district court on remand. Rather, it interprets the relevant statute and regulations in a vacuum, without the defining parameters of an actual case or controversy — the hallmarks of an advisory opinion.
The majority opinion asserts that Part III “is not advisory in nature” because the issues decided are “ ‘based on a concrete set of facts in the context of a live controversy between the parties.’ ” Ante at 406 n. 19 (quoting Rux v. Republic of Sudan, 461 F.3d 461, 476 (4th Cir.2006) (internal quotation marks and citation omitted)). Of course, such a statement is generally true of all of the issues in any case before an appellate court — yet prudence and judicial restraint require that we address only those questions necessary to the disposition of an appeal, lest we overstep our role. See Rux, 461 F.3d at 476 (quoting United States v. Fruehauf, 365 U.S. 146, 157, 81 S.Ct. 547, 5 L.Ed.2d 476 (1961), to support the proposition that an opinion is advisory if it passes “judgment upon issues” not “necessary for decision”). Here, Part III of the majority opinion purports to resolve issues not yet passed upon by a jury or a *412 trial judge and thus not yet focused for this Court’s consideration.[3]
Because I would vacate the district court’s judgment against Defendant based on the “legal nullity” identified by the majority, rather than on Seventh Amendment grounds, and I see no need to pass upon legal issues no longer before this Court as a result of that same legal nullity, I respectfully concur in the result only.

. Citations to the joint appendix are abbreviated as "J.A.”

. I note, too, that I wholeheartedly agree with the majority that the district court’s error here was not harmless, not least because, in addition to the significant disputed factual issues identified by the majority, the verdict sheet also provided no detail about the number or nature of the alleged violation(s). Despite the lack of any indication that the jury found each and every referral in question to be a violation of the Stark Law, the district court nevertheless awarded repayment for all services performed under the contracts at issue. Without more particularized findings by the jury concerning the specific violations, the district court’s estimation of damages cannot be described as "harmless.”

. I believe the majority’s own direction that the lower court "put to [the] jury [the question of] whether the contracts, on their face, took into account the value or volume of anticipated referrals,” ante at 409 (emphases added), perfectly illustrates this point. The meaning of "the contracts, on their face” is most assuredly a question of law appropriately resolved by a court, not a question of fact to be submitted to a jury. See, e.g., Frahm v. United States, 492 F.3d 258, 262 (4th Cir. 2007) ("The interpretation of a contract is a question of law[.]”); Burgin v. OPM, 120 F.3d 494, 497-98 (4th Cir. 1997) (”[T]he essential question is one of the interpretation of the contract's language, a question of law clearly within the competence of courts.”); Scarborough v. Ridgeway, 726 F.2d 132, 135 (4th Cir. 1984) (same).
The undesirable and unintended consequences on the judicial process of such erroneous appellate mandates — which in this case will undoubtedly have a significant impact on the organization of the proceedings on remand — are, of course, exactly what the rules against advisory opinions seek to avoid.