OSCN Found Document:STATE v. FULLER

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only

 
 
 

 
 STATE v. FULLER
2024 OK CR 4
Case Number: S-2023-409
Decided: 03/07/2024
THE STATE OF OKLAHOMA, Appellant v. STEVEN LEON FULLER, Appellee.

Cite as: 2024 OK CR 4, __ __

 

O P I N I O N
ROWLAND, PRESIDING JUDGE:
¶1 The State of Oklahoma appeals the order of the reviewing judge affirming an adverse ruling of the magistrate dismissing the criminal charges in Ottawa County District Court Case No. CF-2022-215 for lack of jurisdiction. See 22 O.S.2011, §§ 1089.1--1089.7; Rule 6.1, Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch.18, App. (2024).
A.
¶2 On November 1, 2022, the State charged Appellee, Steven Leon Fuller, with the following offenses: Count 1, Driving a Motor Vehicle While Under the Influence of Alcohol, Second and Subsequent Offense, After Felony Conviction (
47 O.S.Supp.2020, § 11-902(A)(1)); Count 2, Driving While License Suspended (47 O.S.Supp.2022, § 6-303(B)); Count 3, Failure to Wear a Seatbelt (47 O.S.Supp.2022, § 12-417); and Count 4, Transporting an Open Container of Alcohol (37A O.S.Supp.2021, § 6-101(A)(7)). Fuller promptly filed a motion seeking dismissal of the charges, arguing the State lacked criminal jurisdiction because he is an Indian and the charged offenses occurred in Indian country,[1] namely the Wyandotte Reservation. See McGirt v. Oklahoma, 140 S. Ct. 2452, 2459 (2020) (noting State courts generally lack jurisdiction to prosecute Indians who commit certain crimes in Indian country).
¶3 A hearing on Fuller's motion to dismiss was held on March 30, 2023, before the Honorable Becky R. Baird, Special Judge. At the hearing, Fuller testified that he had been a member of the Cherokee Tribe since birth. Copies of his Certificate of Degree of Indian Blood, dated October 1994, and indicating Fuller is 1/32 degree Indian blood of the Cherokee Tribe, and his Cherokee Nation citizenship identification card were admitted into evidence without objection. The State, represented by the Ottawa County District Attorney, did not dispute Fuller's Indian status, nor did it dispute that the location of the charged offenses falls within the historical boundaries of the Wyandotte Reservation. Instead, the State contended that the Wyandotte Reservation had been disestablished by Congress through termination and, regardless of the reservation status of that land, Congress granted Oklahoma courts concurrent jurisdiction over criminal offenses committed within the Wyandotte Reservation through the General Allotment Act.
[2] 
¶4 At the conclusion of the hearing, Judge Baird found Fuller had sufficiently proved his Indian status, the charged offenses occurred within the historical boundaries of the Wyandotte Reservation, and the State had failed to present sufficient evidence of disestablishment. Judge Baird further found unpersuasive the State's theory of concurrent jurisdiction as a result of allotment, noting that the same argument had been considered and rejected by the United States Supreme Court in McGirt. See McGirt, 140 S. Ct. at 2464. Based upon these findings, Judge Baird concluded the State of Oklahoma lacked criminal jurisdiction under federal law and dismissed the prosecution against Fuller. The State announced its intent to appeal pursuant to 22 O.S.2011, §§ 1089.1--1089.7 and Rule 6.1, Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch.18, App. (2024).

¶5 The State's appeal was assigned to a reviewing judge, the Honorable Rebecca Gore, Associate District Judge.
[3] On April 20, 2023, Oklahoma Attorney General Gentner F. Drummond entered his appearance and that of his Assistant Attorneys General as counsel for the State and filed a brief in support of the State's appeal from the magistrate's adverse ruling. Following an April 21, 2023 hearing, Judge Gore affirmed Judge Baird's ruling dismissing the criminal prosecution against Fuller. The district court's findings of fact and conclusions of law were set forth in a written order filed on April 26, 2023. Among other things, Judge Gore specifically concluded that: (1) the Wyandotte Tribe continues to have a reservation that has not been disestablished by Congress, and (2) the State's jurisdiction is preempted by federal law pursuant to the balancing test of White Mountain Apache Tribe v. Bracker, 448 U.S. 136 (1980).[4] The State now seeks partial review of this ruling.
¶6 This appeal was automatically assigned to the Accelerated Docket of this Court pursuant to Rule 11.2(A)(4), Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch.18, App. (2024). In its Application for Accelerated Docket, the State challenges only the district court's determination that the Wyandotte Reservation has not been disestablished. At the oral argument held before this Court on December 14, 2023, counsel for the State clarified that for policy reasons, the State intentionally elected not to appeal the lower court's ruling on the Bracker balancing test. Therefore, the only issue properly before this Court is whether the district court abused its discretion in finding that the Wyandotte Reservation has not been disestablished and remains intact.

B.
¶7 When reviewing a district court's determination of the status of an Indian tribe's reservation, this Court affords the district court's factual findings that are supported by the record great deference and reviews those findings for an abuse of discretion. State v. Brester, 2023 OK CR 10, ¶ 6, 531 P.3d 125, 129 (citing Parker v. State, 2021 OK CR 17, ¶ 34, 495 P.3d 653, 665). We review the correctness of the district court's legal conclusions and interpretations of the relevant statutes without deference. Id. 
¶8 The State concedes that Congress established a reservation for the Wyandotte Tribe by an 1867 treaty that "set apart for the Wyandottes for their future home" certain land ceded by the Seneca Tribe within Indian Territory. Treaty with the Seneca, Mixed Seneca and Shawnee, Quapaw, etc., Art. XIII--XV, 15 Stat. 513 (Feb. 23, 1867) (hereinafter "Omnibus Treaty"). The State argues on appeal, however, as it did below, that Congress disestablished the Wyandotte Reservation in 1956 through termination legislation and that the subsequent repeal of that legislation and reinstatement of federal recognition of the Wyandotte Tribe did not "recreate" a reservation. See Pub. L. 887, 70 Stat. 893 (Aug. 1, 1956) (repealed 1978) (hereinafter "Wyandotte Termination Act"); Reinstatement of Indian Tribes of Oklahoma, Pub. L. 95-281, 92 Stat. 246 (codified at 25 U.S.C. § 861 (May 15, 1978)) (hereinafter "Reinstatement Act").
¶9 Shortly after the reviewing judge affirmed the magistrate's dismissal of the charges in this matter, but before the State filed its Application for Accelerated Docket appealing that decision, this Court handed down the opinion in State v. Brester, 2023 OK CR 10, 531 P.3d 125. In that case, we rejected substantially similar arguments advanced by the State in regard to the Ottawa Reservation and Peoria Reservation, which both also lie within Ottawa County, and recognized the continuing existence of those reservations.
¶10 Through the same 1867 treaty that established the Wyandotte Reservation, Congress also established the Ottawa and Peoria Reservations. Art. II, III, IV, XVI, and XXII, Omnibus Treaty. In 1956, in the two consecutive days following the passage of the Wyandotte Termination Act, Congress passed similar legislative acts intended to terminate the Peoria Tribe and Ottawa Tribe, respectively. Pub. L. No. 921, 70 Stat. 937 (Aug. 2, 1956) (repealed 1978); Pub. L. No. 943, 70 Stat. 963 (Aug. 3, 1956) (repealed 1978). However, "those Acts were rendered a legal nullity" when they were later repealed by Congress through the Reinstatement Act in 1978. Brester, 2023 OK CR 10, ¶ 24, 531 P.3d at 134.
¶11 In upholding the district court's determination that the land at issue was Indian country for purposes of federal criminal law, we held that the Ottawa and Peoria Reservations, "even if diminished or terminated by each Tribe's respective termination act, were restored by Congress with the express and unqualified repeal of these termination acts in the 1978 Reinstatement Act as well as with the express reinstatement of all rights and privileges lost in connection with termination." Id. 2023 OK CR 10, ¶ 25, 531 P.3d at 135. Accordingly, we affirmed the district court's conclusion that the reservations established for both the Ottawa and Peoria Tribes remain intact. Id. Brester controls here.
¶12 In the present appeal, without abandoning its previous argument that the Wyandotte Reservation did not survive termination, the State prudently "concedes that the history of congressional treatment of the Wyandotte Nation shows that it is indistinguishable from the Ottawa and Peoria Nations at issue in State v. Brester, 2023 OK CR 10, 531 P.3d 125, and that the arguments the State presented below are now foreclosed by Brester."
C.
¶13 Upon careful review of the record before us, and in light of the State's concession that its argument is foreclosed by Brester, we find the district court's determination that the Wyandotte Reservation has not been disestablished by Congress and remains Indian country for purposes of federal criminal law was not an abuse of discretion.
¶14 We take this opportunity to reiterate that in cases involving offenses falling under the General Crimes Act, 18 U.S.C. § 1152, the jurisdictional analysis does not end upon the finding that a crime was committed in Indian country. See Brester, 2023 OK CR 10, ¶ 36, 531 P.3d at 137-38. In Castro-Huerta, the United States Supreme Court clarified that "a State has jurisdiction to prosecute crimes committed in Indian country unless state jurisdiction is preempted." Castro-Huerta, 597 U.S. at 655. The Court held that neither the General Crimes Act nor Public Law 280, 67 Stat. 588, preempts the State's prosecutorial authority over crimes committed in Indian country. Id. at 647, 649. To determine whether preemption nevertheless occurs, it is incumbent upon a reviewing court to apply the Bracker balancing test by taking into consideration tribal, state, and federal interests to determine whether the exercise of state criminal jurisdiction would infringe upon tribal self-government. Id. at 649 (citing Bracker, 448 U.S. at 142-43, 145).
¶15 As we observed in Brester, "Castro-Huerta leaves unresolved whether the State's jurisdiction to prosecute Indians for crimes under the General Crimes Act in Indian country has been preempted." Brester, 2023 OK CR 10, ¶ 36, 531 P.3d at 138. Although the State argued below that the exercise of state prosecutorial authority over the crimes charged against Fuller would not infringe upon tribal self-government under the Bracker balancing test, it has expressly abandoned that argument in this appeal. Thus, application of the Bracker balancing test in this context will have to await another day and another case.
D.
¶16 There are two dissents to our ruling today. Judge Lumpkin finds the State's concession renders this appeal a request for an advisory opinion, which of course this Court does not issue. Murphy v. State, 2006 OK CR 3, ¶ 1, 127 P.3d 1158, 1158. An advisory opinion is a "nonbinding statement by a court of its interpretation of the law on a matter submitted for that purpose." See Black's Law Dictionary 1125 (8th ed. 2004) (defining advisory opinion). The United States Supreme Court has characterized advisory opinions as an "advance expression[ ] of legal judgment upon issues which remain unfocused because they are not pressed before the Court . . . ." United States v. Fruehauf, 365 U.S. 146, 157 (1961). Today's decision is not merely advisory. It is binding and precedential on all parties as to the existence of the Wyandotte Reservation, and indeed that is the whole point of the State's appeal.
¶17 The State has never abandoned its disestablishment argument, but in this appeal it candidly and wisely concedes that our Brester decision renders its position a non-starter. A party's candid recognition that controlling precedent is adverse to its position, however, does not, in and of itself, render this Court's resolution of the issue advisory. After losing at the district court level the State was faced with a choice: leave in place the unpublished, non-binding ruling of one district judge in one county of the judicial district finding that the Wyandotte Reservation still exists, or appeal to this Court, knowing that Brester would doom their position, but desiring a precedential, published opinion that all could rely upon as to the existence of the reservation.
¶18 Judge Lewis concurs with our holding that the Wyandotte Reservation was never disestablished, but dissents to the remainder of the opinion. He accuses us of staging a "counterrevolution in Indian law", which indicates that he sees a base revolution afoot. We see neither. We see only this Court, diligently striving to interpret and apply the decisions of the United States Supreme Court in an area of law that is in the midst of a sea change. He opines that this Court has been "[f]orced by the Supreme Court in McGirt to recognize the undiminished reservations of some of Oklahoma's tribes", and asserts this Court is motivated by a desire to diminish "tribal sovereignty itself." These two statements are an unfair attack on the Court's motives,
[5] and are factually unsupported. Since McGirt was handed down in 2020, this Court has readily and consistently applied it in finding the existence of seven other reservations, and in fact, of the two post-McGirt opinions finding a reservation to have been disestablished, one was unanimous[6] and the other was authored by Judge Lewis.[7] 
¶19 Flowery rhetoric and ad hominem attacks aside, this boils down to a disagreement over how to interpret Castro-Huerta. Judge Lewis takes a very narrow reading and finds it applicable only to non-Indians charged with crimes in Indian Country. Brester, 2023 OK CR 10, ¶ 6, 531 P.3d at 140 (Lewis, J. concurring in part/dissenting in part). He disagrees with the majority's view that in Castro-Huerta, the Supreme Court held that the General Crimes Act, by its very text, does not preempt state jurisdiction in any case and that any such preemption comes about as a result of the so-called Bracker balancing test. We simply disagree, but we do not question the good faith of his motives. He is correct that Castro-Huerta offers no guidance as to how Bracker should be applied to Indian defendants, but he is incorrect in our view that the General Crimes Act can logically be read to preempt state jurisdiction over one class of persons, while not preempting over a different class, without expressly mentioning either class in its text.

DECISION
¶20 The order of the District Court of Ottawa County dismissing Case No. CF-2022-215 is AFFIRMED. Pursuant to Rule 3.15, Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch.18, App. (2024), the MANDATE is ORDERED issued upon the filing of this decision.

AN APPEAL FROM THE DISTRICT COURT OF OTTAWA COUNTY
THE HONORABLE REBECCA GORE, ASSOCIATE DISTRICT JUDGE

APPEARANCES IN TRIAL COURT
DOUGLAS PEWITT
DISTRICT ATTORNEY
102 E. CENTRAL AVE., STE. 201
MIAMI, OK 74354
COUNSEL FOR STATE
(BEFORE MAGISTRATE)
GENTNER DRUMMOND
ATTORNEY GENERAL OF
OKLAHOMA
CAROLINE E.J. HUNT
ASST. ATTORNEY GENERAL
313 N.E. 21st ST.
OKLAHOMA CITY, OK 73105
COUNSEL FOR STATE
(BEFORE REVIEWING JUDGE)
TERRY ALLEN
ATTORNEY AT LAW
112-B NORTH VANN
PRYOR, OK 74361
COUNSEL FOR DEFENDANT

APPEARANCES ON APPEAL
GENTNER DRUMMOND
ATTORNEY GENERAL OF
OKLAHOMA
RANDALL YOUNG
CAROLINE E.J. HUNT
ASST. ATTORNEYS GENERAL
313 N.E. 21st ST.
OKLAHOMA CITY, OK 73105
COUNSEL FOR APPELLANT
CHAD JOHNSON
INDIGENT DEFENSE SYSTEM
111 N. PETERS AVE.,
SUITE 100
NORMAN, OK 73069
COUNSEL FOR APPELLEE

 
OPINION BY: ROWLAND, P.J.
MUSSEMAN, V.P.J.: Concur
LUMPKIN, J.: Dissent
LEWIS, J.: Concur in Part/Dissent in Part
HUDSON, J.: Specially Concur
FOOTNOTES
[1] Indian country includes "all land within the limits of any Indian reservation under the jurisdiction of the United States Government, notwithstanding the issuance of any patent, and, including rights-of-way running through the reservation[.]" 18 U.S.C. § 1151(a).
[2] General Allotment Act of 1887 ("Dawes Act"), 24 Stat. 388.
[3] Judge Gore sits in Mayes County, which is located within the same judicial administrative district as Ottawa County.
[4] Although the magistrate appears to have reached her decision without conducting Bracker balancing, the written order entered by the reviewing judge indicates the necessary balancing of tribal, state, and federal interests was undertaken to assess whether state jurisdiction was preempted in this matter. See Oklahoma v. Castro-Huerta, 597 U.S. 629, 649-51 (2022). Without articulating the specific interests considered, the reviewing judge concluded that the State's concurrent jurisdiction is preempted because "the exercise of state jurisdiction would unlawfully infringe upon tribal self-government."
[5] Attacking the motives of one's opponent, rather than their argument, is known as an ad hominem fallacy. Every great thinker since Aristotle has recognized such fallacious arguments as unsound logic.
[6] Buck v. State; 2023 OK CR 2, ¶ 25, 525 P.3d 39, 45.
[7] Martinez v. State, 2021 OK CR 40, ¶ 24, 502 P.3d 1115, 1120.

LUMPKIN, JUDGE, DISSENTING:
¶1 As the opinion correctly sets out, this is an appeal pursuant to 22 O.S.2011, §§ 1089.1-1089.7 and Rule 6.1, Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch. 19 App. (2024). Appeals from the District Courts brought under the above statutes and rule are reviewed for an abuse of discretion. An abuse of discretion is a clearly erroneous conclusion and judgment, one that is clearly against the logic and effect of the facts presented or, stated otherwise, any unreasonable or arbitrary action taken without proper consideration of the facts and law pertaining to the matter at issue. Neloms v. State, 2012 OK CR 7, ¶ 35, 274 P.3d 161, 170 (internal citation and quotation marks omitted). Thus, the State's claim should be that the District Court and reviewing judge abused their discretion in dismissing the Information filed in this case.
¶2 However, the State of Oklahoma does not allege any abuse of discretion nor attack the rulings in the District Court. Instead, as reflected in the State's Application for Accelerated Docket, the State requests, "to preserve the arguments it pressed in Brester, now as applied to the Wyandotte Nation, and obtain a ruling from this Court, as the State's highest criminal court, as to whether the Wyandotte Nation reservation is intact." (emphasis added). This request is nothing more than a request for an advisory opinion on the status of the Wyandotte Reservation. The State does not allege, much less argue, any abuse of discretion on the part of the District Court in rendering its decision. Courts vested with civil jurisdiction are authorized by statute to give declaratory judgments, i.e., to "determine rights, status, legal relations . . . whether or not other relief is or could be claimed. . ." . 12 O.S.2021, § 1651. This Court has no statute authorizing it to pronounce judgment absent a legal controversy to resolve.
¶3 This Court has a long history of refusing to issue advisory opinions as it is only empowered to adjudicate and render decisions regarding facts and law in controversy. See Matter of L.N., 1980 OK CR 72, ¶ 5, 617 P.2d 239, 240 ("An advisory opinion does not fall within the Court's original or statutory jurisdiction; neither does it come within its appellate review. To offer advice in the form of an opinion would be to interfere with the responsibility of the trial court to exercise the powers confided to it. We will not do so absent constitutional or statutory authority."); Canady v. Reynolds, 1994 OK CR 54, ¶ 9, 880 P.2d 391, 394 ("[T]his Court cannot otherwise issue advisory opinions."); and Murphy v. State, 2006 OK CR 3, ¶ 1, 127 P.3d 1158 ("[T]his Court does not issue advisory opinions."). Exactly what an advisory opinion is, however, has never been set out by this Court, but there are clues contained in the cases cited above.
¶4 In Matter of L.N., 1980 OK CR 72, ¶ 5, 617 P.2d 239 at 240, Petitioner's failure to seek relief in his petition for writ of prohibition was not sufficient to invoke the jurisdiction of this Court and his petition amounted to a request for an advisory opinion regarding what crime the district attorney should have charged him with. "[T]his Court finds no statutory authority to render an opinion [regarding an inmate's receipt of earned credits prior to his eligibility for release] which has no effect on an inmate's judgment and sentence. Such a ruling is prohibited, as it would be advisory only." Canaday, 1994 OK CR 54, ¶ 40, 880 P.2d at 400. Finally, in Murphy, 2006 OK CR 3, ¶ 1, 127 P.3d at 1158, on post-conviction review, this Court remanded appellant's mental retardation claim for jury trial. The State sought guidance regarding the conduct of appellant's jury trial on his mental retardation claim. This Court refused to answer the State's questions, finding its request was for an advisory opinion.
¶5 From these cases, it seems clear that when this Court is asked to give its assessment of an issue which is not an error alleged to have occurred at trial or pretrial, nor one for which the appellant seeks relief, it is being asked for an advisory opinion. In this case, the State does not allege the District Court committed any error or abuse of discretion in making its ruling nor does it seek relief. It merely seeks this Court's assessment of the District Court's ruling. The State wants to tempt this Court to violate its long history of jurisprudence by discussing the appeal through the statutory process set out in Section 1089.1, et seq., despite the fact that the State alleges no error made by the District Court. The State merely wants this Court to add an "atta boy" to the District Court's ruling. This we are not empowered to do.[1] 

¶6 As to the underlying issue of the Wyandotte Reservation status, it suffers the same defect as I outlined in my separate writing in State v. Brester, 2023 OK CR 10, ¶ 2. 531 P.3d 125, 138, Lumpkin, J., concur in part/dissent in part. As I stated in my Brester writing:

McGirt addressed the disestablishment of Indian reservations, but it completely disregarded the analysis set forth in Solem, and instead focused solely on the exact language of Congressional acts and requiring an act of Congress to specifically state that a reservation was disestablished. If that is the law as to the disestablishment of an existing reservation, which we have in this case, then the same specific language should be required to establish a reservation. The opinion before us does not follow that course and instead allows the general broad language used to reestablish the recognition of a tribe to also reestablish a reservation that has been specifically disestablished. 
Id.
¶7 The legitimacy of the State's appeal is questionable from the start as it received what it appears it desired in the District Court, i.e., a recognition that the Wyandotte Tribe's Reservation is still in existence.
[2] It appears the District Courts in the limited area claimed by the Wyandotte Tribe are going to find a reservation exists at this time. That is what the State seeks in this case. Therefore, the Court has been pulled into a trap to issue an advisory opinion, and I must dissent to that action.
FOOTNOTES
[1] The cases from this Court control over what an advisory opinion is much more than a definition from a law dictionary.
[2] The opinion points out our ruling on the application of a Bracker analysis must be deferred until another day. Reviewing the requirements of a Bracker analysis, it is legally hard to see how the enforcement of a state criminal law, not specifically pre-empted by the federal government, could ever interfere with internal tribal relations. However, that issue will be for determination at the time it may be presented to this Court.

LEWIS, JUDGE, CONCUR IN PART, DISSENT IN PART:
¶1 I concur in the Court's conclusion that the Wyandotte Reservation was never disestablished by Congress. I continue to dissent from the Court's aggressive use of dicta in a footnote from Castro-Huerta as the charter for a counterrevolution in Indian law. Castro-Huerta's application to this case is not even presented for our review. The last two pages of the opinion are thus dicta instructing lower courts in the future application of dicta.
¶2 Forced by the Supreme Court in McGirt to recognize the undiminished reservations of some of Oklahoma's tribes, this Court seems now to have set its sights on diminishing tribal sovereignty itself. The means for that project is "Bracker balancing"--the adjunct "jurisdictional analysis" by which state courts will weigh "tribal, state, and federal interests" to decide whether prosecution of an Indian for a crime in Indian Country would infringe "tribal self-government."
¶3 Rather than indulge the dangerous inference about the meaning of Castro-Huerta's footnote that currently captivates this Court, I will wait for stronger evidence that Congress or the Supreme Court has sanctioned this unprecedented state court intrusion upon tribal and federal sovereignty.

HUDSON, JUDGE, SPECIALLY CONCURRING:
¶1 The parties dropped the ball in this case by not addressing on appeal the tribal, state, and federal interests, pursuant to White Mountain Apache Tribe v. Bracker, 448 U.S. 136 (1980), and whether the exercise of state criminal jurisdiction on the reservation would infringe upon tribal self-government. The District Court addressed these issues below, consistent with the Supreme Court's directive in Oklahoma v. Castro-Huerta, 597 U.S. 629, 649-50 (2022). On appeal, however, the Attorney General abandoned the State's argument that the exercise of state prosecutorial authority over the crimes charged against an Indian defendant in this case would not infringe upon tribal self-government under the Bracker balancing test.
¶2 This decision is surprising to say the least. Because of the State's decision to jettison its position argued before the trial court, we are unable to address a critical issue that is central to the resolution of this case, namely, whether the State can conjointly pursue the charges. The matter thus remains unresolved until such time as the State is motivated to act in a similar case, pursuant to the Supreme Court's analysis in Castro-Huerta.
¶3 "Under the General Crimes Act . . . both the Federal Government and the State have concurrent jurisdiction to prosecute crimes committed in Indian country." Castro-Huerta, 597 U.S. at 639. I agree with the majority opinion's response to the dissenters, particularly the observation that the General Crimes Act cannot be logically read to preempt state jurisdiction over Indian defendants, while not preempting state jurisdiction over Indian victims, when the statute mentions neither class in its text. We must apply the Bracker balancing test to resolve the ultimate issue of the State's criminal jurisdiction.
¶4 Further, our consideration of Castro-Huerta does not amount to a "counter-revolution" in Indian law as Judge Lewis claims. The Court in Castro-Huerta told us how to analyze claims arising under the General Crimes Act--namely by applying Bracker--and we are duty-bound to so do. See Zivotofsky ex rel. Zivotofsky v. Clinton, 566 U.S. 189, 194 (2012) ("In general, the Judiciary has a responsibility to decide cases properly before it, even those it 'would gladly avoid.'" (quoting Cohens v. Virginia, 6 Wheat. 264, 404 (1821))); Robb v. Connolly, 111 U.S. 624, 637 (1884) ("Upon the state courts, equally with the courts of the Union, rests the obligation to guard, enforce, and protect every right granted or secured by the constitution of the United States and the laws made in pursuance thereof, whenever those rights are involved in any suit or proceeding before them[.]"). Today's opinion is consistent with this understanding. I therefore specially concur in today's decision.
 

 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Criminal Appeals Cases

 
Cite
Name
Level

 
1994 OK CR 54, 880 P.2d 391, 
CANADY v. REYNOLDS
Discussed at Length

 
2006 OK CR 3, 127 P.3d 1158, 
MURPHY v. STATE
Discussed at Length

 
2012 OK CR 7, 274 P.3d 161, 
NELOMS v. STATE
Discussed

 
2021 OK CR 17, 495 P.3d 653, 
PARKER v. STATE
Discussed

 
2021 OK CR 40, 502 P.3d 1115, 
MARTINEZ v. STATE
Discussed

 
2023 OK CR 2, 525 P.3d 39, 
BUCK v. STATE
Discussed

 
2023 OK CR 10, 531 P.3d 125, 
STATE v. BRESTER
Discussed at Length

 
1980 OK CR 72, 617 P.2d 239, 
MATTER OF L.N.
Discussed at Length

Title 12. Civil Procedure

 
Cite
Name
Level

 
12 O.S. 1651, 
Determination of Rights, Status or Other Legal Relations - Exceptions
Cited

Title 22. Criminal Procedure

 
Cite
Name
Level

 
22 O.S. 1089.1, 
State's Right to Appeal
Discussed at Length

Title 47. Motor Vehicles

 
Cite
Name
Level

 
47 O.S. 11-902, 
Persons Under the Influence of Alcohol or Other Intoxicating Substance or Combination Thereof
Cited

 
47 O.S. 6-303, 
Driving While License Under Suspension or Revocation - Penalties - Motorcycles
Cited

 
47 O.S. 12-417, 
Requirements of Act - Applicability of Act - Routine Stops Prohibited
Cited

Title 37A. Alcoholic Beverages

 
Cite
Name
Level

 
37A O.S. 6-101, 
Personal Prohibited Acts - Violations
Cited

 
 

 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA